# 𝔕𝔦𝔠𝔥𝔪𝔬𝔫𝔡.

## Charles M. Winston v. N. W. Winston, Sr., et als.

### December 17, 1925.

1. ABATEMENT, REVIVAL AND SURVIVAL—*Actions—Commencement of Actions—Specific Performance of a Contract to Convey Realty in Return for Services—Death of one Defendant.*—A suit by a son against his father and another child of the father, for the specific performance of a contract by the father to convey realty to the son for services to be rendered by the son, was not brought prematurely, after the son had rendered the services and the father had broken with the son and driven him from his home and conveyed the property in question to another one of his children. If complainant was entitled to relief at all, he was entitled to it before the death of the father, and therefore, the father's death did not necessitate the filing of a new bill.

2. AMENDMENTS—*Limitation of Amendment—Case at Bar.*—In the instant case the original bill was dismissed with leave to amend. An amended bill was filed which was also dismissed with leave to file an amended bill to the amended bill. A second amended bill was filed which was practically identical with the former, which was also dismissed for lack of equity. A third "amended and supplemental bill" was tendered and on motion was rejected by the court.

   *Held:* That there was no error in the rejection of this third amended bill, as there is some limit to amendments and that limit had been reached in the instant case.

3. AMENDMENTS—*Specific Performance—Dismissal of Bill with Leave to Amend—Case at Bar.*—In the instant case, a bill for specific performance was dismissed with leave to amend. An amended bill was filed which was identical with the original bill until the prayer for relief was reached. In the original bill the prayer for relief was for specific performance and for general relief. This also was in the prayer of the second bill, but by way of amendment there was added an alternate prayer for damages to be granted in the event the court should be of opinion that specific performance could not be ordered.

   *Held:* That the so called amended bill was not an amended bill at all and had no more effect than had the bill which it purported to amend been copied and refiled.

4. BILL IN EQUITY—*Prayer for Relief—General and Specific Relief.*—A bill in equity should contain a prayer for both specific and general relief, but under a prayer for general relief only, there may be granted any relief warranted by the facts alleged; and, under a prayer for specific and general relief, may be given the relief asked specifically, and any further relief warranted by the allegations, so it be not inconsistent with the specific relief asked.

5. SPECIFIC PERFORMANCE—*Specific Performance Denied—Compensation to Injured Party.*—The power of a court of equity to give compensation merely to an injured party where specific performance is denied was long an open question in Virginia, but whatever might have been the rule heretofore, there is no doubt that a court of equity, even where specific performance is refused, will now decree compensation to the purchaser in many cases.

6. SPECIFIC PERFORMANCE—*Specific Performance Denied—Payment for Services Rendered.*—While in a suit for specific performance, by a son against his father, of a contract to devise or convey realty in consideration of services to be rendered by the son, damages pure and simple could not be allowed the son where specific performance was denied by the court, yet payment for the son's services by the way of compensation might be decreed.

7. SPECIFIC PERFORMANCE—*Prayer for Relief—Alternate Prayer for Pecuniary Compensation.*—In a suit by a son against his father for specific performance of a contract to convey or devise realty to the son in consideration of service performed by him, it was not necessary that an alternate prayer for pecuniary compensation be tendered, as that could be given under the prayer for general relief.

8. BILL IN EQUITY—*Prayer for Relief—Inconsistent Positions—Relief Inconsistent with Special Prayer.*—Of course a litigant cannot take inconsistent positions, and for the same reasons, when there is a special prayer, the court cannot, under a general prayer, grant relief inconsistent therewith.

9. SPECIFIC PERFORMANCE—*Alternate Relief—Case at Bar.*—In the instant case, a suit for specific performance of a contract between the father and son, under which the father was to devise or convey certain real property to the son in return for services rendered by the son, the father had put it out of his power to deed or will the realty by conveying it to another. So from him compensation in money or payment for services rendered was the only compensation which was possible for the son to receive. The special prayer was that the contract be specifically enforced against the father and that, if necessary, the realty be held in trust by the grantee of the father to that end. If this could not be done, there was nothing, even by strict construction, inconsistent in ordering a return of the consideration paid or payment for services rendered. Equity could not do less and it would have been idle circumlocution to remand these parties to a court of law when, if needed, an issue out of chancery was available.

10. Final Judgments and Decrees—*Court Called upon Afterwards to Determine if its Conditions had been Complied with—Case at Bar.*—A decree at the end of thirty days from its date became final. Within that time an amended bill might have been filed, but not afterwards; and the finality of the decree was not affected by the fact that the court was called upon afterwards to determine if its conditions had been complied with. No amended bill was filed. From this decree no appeal was taken and its correctness was not questioned in the record.

*Held:* That not only did the appeal in the instant case come too late but in fact there was no appeal.

11. Appeal and Error—*Leave to Amend—Demurrer Sustained without Objection—Case at Bar.*—The rule is well settled that when a demurrer to a bill is sustained, with leave to the plaintiff to amend, if the plaintiff exercises that privilege, he cannot afterwards be heard to object to the decree on the original bill, and in the instant case this rule is not affected by the provisions of section 6116 of the Code of 1919, which provides that where a demuree amends his pleading he shall not be deemed to have waived his right to stand upon his pleading before the amendment, provided the order of the court shows that he objected to the ruling of the court sustaining the demurrer. No such objection or reservation is embodied in any decree in this suit.

12. Stare Decisis—*Sustaining Demurrer with Leave to Amend—Identical Facts Set up in Amended Bill.*—In the instant case the court, having decided upon the facts as set out in the original bill, and sustained the demurrer to that bill, was not called upon to again decide upon these identical facts because they were set out in another and subsequent bill. It would greatly increase the labor of appellate courts and costs to litigants if questions once considered and determined could be reopened on any subsequent appeal.

Appeal from a decree of the Circuit Court of Louisa county. Decree for defendants. Complainant appeals.

*Affirmed.*

The opinion states the case.

*W. W. Smith, Jr.,* and *Fulton & Wicker,* for the appellant.

*W. C. Bibb* and *Gordon & Gordon,* for the appellees.

HOLT, J., delivered the opinion of the court.

The original bill was filed in this suit on August 2, 1920. To it demurrers were interposed and on November the 21st, 1921, a decree was entered which was in part as follows: "On consideration whereof the court, being of the opinion that the bill of the complainant is without equity and insufficient in law and that the demurrers thereto should be sustained, doth hereby order and decree that the said demurrers to said bill be and they are hereby sustained, and on motion of the complainant leave is hereby given him to amend said bill and file same within thirty days from the date hereof."

To this decree no objection has been ever made. On December 2, 1921, in accordance with leave given, an amended bill was filed which, with considerable elaboration of detail, contained substantially the allegations set out in the petition for appeal. These allegations are: "The bill alleges a parol contract between the petitioner and his father, the defendant, whereby the father offered, agreed and contracted in the year 1905 that if the petitioner would continue to live with and in the home of the said defendant and give and render to him his services, society, care and attention and work for him and help take care of, cultivate and operate the home farm of the said defendant so long as he might desire your petitioner to do so, that the defendant would pay the petitioner $150.00 per year and give him his board and lodging and give him the right, privilege and option to purchase the Mt. Airy farm, together with the buildings and improvements thereon, for petitioner's services and for $2,500.00 to be paid to the executors of the defendant and to be charged against his share in his father's estate.

That the said contract and agreement was made both orally and in writing; that your petitioner, the complainant, had accepted the said contract and agreement and had taken joint possession of said farm and had fully performed his part of said contract in so far as the defendant allowed him to do so, and that the complainant and defendant had, in 1911, modified said contract to the extent of increasing the amount to be paid the executors of the father, the defendant, from $2,500.00 to $3,500.00; and that the defendant on May 18, 1911, had rewritten his will, in which he had set out in part said agreement made in 1905. For the allegations as to the contract, see clauses 2, 3, 4, 5, 6, 7 and 8 of the bill, pages 21 to 28 of tr., stating the contract and alleging full performance on the part of your petitioner in so far as he was allowed to perform the same by the defendant and the joint possession of the said farm by your petitioner from 1905 to 1920 with the defendant.''

The bill goes on to state that this defendant, after he had caused the petitioner to work upon this farm under this contract for a period of fifteen years, broke it, drove him from home and later conveyed it to another one of his children, Roberta N. Smith, reserving a life estate to himself; and that Roberta N. Smith had full knowledge of the contract and all of its conditions and took subject to plaintiff's rights. The prayer is that she hold it as trustee and at the death of the said N. W. Winston, Sr., be compelled to convey it to petitioner. See paragraphs 9 to 15 of the amended bill, tr. 28 to 33.

This first amended bill was also demurred to and on October 6., 1922, the following order was entered:

## "FINAL DECREE

"This cause coming on this day to be further heard on papers formerly read, and the amended bill and exhibits filed therewith, and the demurrers of the defendant filed thereto, and was argued by counsel:

"On consideration whereof the court, being of opinion that the said amended bill of complaint is without equity and insufficient in law, doth hereby sustain the demurrers thereto, and doth adjudge, order and decree that said amended bill of complaint be dismissed at the costs of the plaintiff, but, on motion of plaintiff, by attorney, leave is granted him to file an amended bill, to the amended bill heretofore filed, should he so elect, within thirty days from this date."

Under the leave thus given and on November 4th, 1922, plaintiff filed his second amended bill, which was the identical bill filed on December 2, 1921, already held to be without equity and insufficient in law and which had been dismissed by the decree of October 6, 1922, with leave, as we have seen, to amend. The only change made in the second amended bill was in its prayer, and that prayer, by way of an addition to the prayer to the first amended bill, had incorporated into it this:

"Or in event that the court is of opinion that your complainant is not entitled to specific performance as herein prayed for, that then said defendant, N. W. Winston, Sr., be required to pay to your complainant damages for the breach of contract to devise said real estate to your complainant upon terms and conditions therein alleged."

To this second amended bill demurrers were also filed charging the same defects in substance demurred

to in the first amended bill and charging in addition that there had been in fact no amendment at all to said first amended bill, and that the right of the plaintiff to recover was *res adjudicata.*

For the same reasons there was also a motion to dismiss.

Thereafter, and on October 4, 1923, this order was entered:

### "FINAL DECREE.

"This cause came on this day to be again heard on the papers formerly read herein, the last amended bill filed by leave of court within the time granted in the decree of the 6th day of October, 1922; the motion to dismiss and demurrers filed to said amended bill; a suggestion by complainant's counsel that N. W. Winston, Sr., has departed this life, accompanied by a motion to revive this cause against N. W. Winston, Jr., and W. C. B. Winston, executors of the said N. W. Winston, Sr., deceased, the tender of a further bill, styled 'amended and supplemental bill,' with request to be allowed to file the same in lieu and place of said last amended bill, and motion of defendants to reject the said 'amended and supplemental bill' and was argued by counsel.

"On consideration whereof the court doth direct this cause to be revived, so far as the defendant, N. W. Winston, Sr., deceased, is concerned, against his said executors, N. W. Winston, Jr., and W. C. B. Winston, which is accordingly done, and the motion to reject the said 'amended and supplemental bill' offered at this time, is sustained and the same is rejected; and on motion of complainant, by counsel, to make the 'amended and supplemental bill' offered at this time, which was

not allowed to be filed, a part of the record, the court doth order and direct that the said rejected pleading, viz., the said 'amended and supplemental bill' be, and the same hereby is, made a part of the record, and the court doth sustain the demurrers filed to the amended bill filed on the said 4th day of November, 1922, and it is ordered that this cause be dismissed and that the defendant recover his costs of the complainant; and nothing further remaining to be done in this cause, the same is directed to be stricken from the docket and placed among causes ended."

This rejected third amended and supplemental bill is little more than the bills theretofore rejected, coupled with the suggestion of the death of N. W. Winston, Sr.

[1, 2] The suit was not prematurely brought. If the plaintiff was entitled to relief at all he was entitled to it before the death of Mr. Winston. *Milton* v. *Kite*, 114 Va. 256, 76 S. E. 313, and therefore Mr. Winston's death did not necessitate the filing of a new bill. There is not a single fact set out in it which was not known to plaintiff from the beginning of this litigation. There is some limit to amendments and that limit had been reached in this case. There was no error in its rejection.

[3] With this third amended and supplemental bill out of the way, we must first determine if the bill of November 4, 1922, was an amended bill, or if it was in fact the identical bill of December 2, 1921. Until the prayer for relief is reached it unquestionably is. They differ in this: In the first, the prayer is for specific performance and for general relief. This also is in the prayer in the second bill, but by way of amendment there is added an alternate prayer for damages to be granted in the event the court should be of opinion that specific performance could not be ordered.

If the court, under a prayer for specific performance and for general relief in a case wherein specific performance is denied, has power to decree damages by way of compensation, then this so called amended bill is not an amended bill at all and has no more effect than had the bill which it purported to amend been copied in extenso and refiled.

[4] "A bill in equity should contain a prayer for both specific and general relief, but under a prayer for general relief only, there may be granted any relief warranted by the facts alleged, and under a prayer for specific and general relief, may be given the relief asked specifically, and any further relief warranted by the allegations, so it be not inconsistent with the specific relief asked." *Vance Shoe Co.* v. *Haught et al.*, 41 W. Va. 275, 23 S. E. p. 553, Hogg's Equity Procedure, sec. 110; *Woolfork* v. *Graves*, 113 Va. 182, 69 S. E. 1039, 73 S. E. 721, 25 R. C. L., secs. 165 and 174.

Indeed, there is no controversy about the elementary general principles here stated.

In its application those principles stated by Judge Burks in *Hurt* v. *Jones*, 75 Va. 341-352, are to be remembered: "Under the general prayer the plaintiff is entitled to any relief which the material facts and circumstances put in issue by the bill will sustain; but it must be consistent with the case made, and if inconsistent with it and with the special relief prayed for, will always be refused."

[5] The power of a court of equity to give compensation merely to an injured party where specific performance is denied was long an open question in Virginia. In *Nagle* v. *Newton*, 63 Va. 814, the court said: "The case before us does not come within the rule attempted to be settled in the conflicting decisions referred to and relied upon at the bar. The question

in those cases, upon which the authorities are much divided, is whether a court of equity will hold jurisdiction of a case merely to make compensation to an injured party where it cannot give specific performance. In other words, is compensation within the power of equity only as an incident of, or collateral to, a specific performance, which would otherwise be inequitable, or can it decree compensation by itself, without reference to specific performance. There is very high authority, including the Supreme Court of the United States, for the proposition that courts of equity have this distinct and independent power of compensation. *Pratt* v. *Law & al.*, 9 Cranch R. 456, [3 L. Ed. 791]; *Philips* v. *Thompson*, 1 John Ch. R. [N. Y.], 131; *Woodcock* v. *Bennet*, 1 Cow. R. [N. Y.], 711, [13 Am. Dec. 568]."

This open question was answered in *Stearns* v. *Beckham*, 72 Va. 379, where it was said: "But whatever may have been the rule heretofore, there is no doubt that a court of equity, even where specific performance is refused, will now decree compensation to the purchaser in many cases."

In that case Judge Staples said: "There is a wide distinction between an application to a court of equity to assess damages arising from a failure to convey, and an application for the repayment of the purchase-money, when the vendor is unable or unwilling to convey."

In the first case he was of opinion that there was no such power. In the second he thought it did exist.

[6] It follows that damages pure and simple could not be given here, while payment for services by way of compensation might be decreed.

The substance of the claim made in the bill was that Charles M. Winston worked for his father for many

years for an agreed compensation which consisted in part of an annual payment of money and in part of a promise to give him the right to purchase a certain farm for a sum less than its actual value, so that damages so-called can readily be conceived to mean complete payment for services rendered and not subject to the objection suggested by Judge Staples.

[7] Was it necessary that a distinct alternate prayer for pecuniary compensation be tendered, or could that be given under the prayer for general relief?

In *Stearns v. Beckham, supra,* Judge Staples pointed out that this relief could always be granted when alternate relief was asked. He also said: "In some of these cases it is held that the court will go on to decree compensation under the prayer for general relief; and if this cannot be done consistently with the cases made in the bill, leave will sometimes be given to amend the pleadings in order that the plaintiff may properly present his case. In *Parkhurst v. Van Cortlandt,* 1 John. Ch. R. [N. Y.], 273, Chancellor Kent refused to execute the contract, and although the plaintiff did not in his bill ask any relief on account of improvements, not looking to the alternative of losing it, yet the chancellor directed an account to be taken between the parties, crediting the purchaser with a reasonable compensation, and charging him with a reasonable rent." In that case relief was given under the general prayer.

See also *Watts v. Waddle,* 6 Pet. 391, 8 L. Ed. 437, where the court said: "Under this prayer any relief may be given for which the basis is laid in the bill." In *Woolfork v. Graves, supra,* it was said: "Where the plaintiff prays for specific and also for general relief, if the special prayer is such that no relief can be granted under it, the court may, under the prayer for general relief, grant any proper relief consistent with the case

made by the bill." See also *Tayloe* v. *Merchants Fire Ins. Co.*, 9 How. 398, 13 L. Ed. 187.

[8] Of course a litigant cannot take inconsistent positions, and for the same reasons, when there is a special prayer, the court cannot under a general prayer grant a relief inconsistent therewith.

[9] Here a recovery is amply sustained by the case made. The father had put it out of his power to deed or will this farm and so from him compensation in money or payment for services rendered was the only compensation it was possible to receive.

The special prayer when read in connection with the bill is that the contract be specifically enforced against the farm and that, if necessary, it be held in trust by Roberta Smith to that end. If this cannot be done there is nothing, even by strict construction, inconsistent in ordering a return of the consideration paid or payment for services rendered. Equity could not do less and it would have been idle circumlocution to remand these parties to a court of law when, if needed, an issue out of chancery was available.

We are of opinion that the relief asked in the bill of November 4, 1922, might have been granted as well under the bill of December 2, 1921, as under it. It follows from what has been said that these bills are in all respects the same and that plaintiff never availed himself of the privilege granted in the decree of October 6, 1922, and has filed no amended bill.

[10] The decree of October 6, 1922, at the end of thirty days from its date became final. Within that time an amended bill might have been filed, but not afterwards; and the finality of that decree is not affected by the fact that the court was called upon afterwards to determine if its conditions had been complied with. *London & Co.* v. *Moore*, 98 Va. 256,

35 S. E. 722. From this decree no appeal has been taken. Its correctness is not questioned in the record, and so we are faced by the fact not that the appeal in this case came too late, but that it has not come at all.

The petition states: "Your petitioner represents that he is aggrieved by a final decree rendered against him on October 4, 1923, in the Circuit Court of Louisa county, Virginia."

[11] If we were to hold that an amended bill was filed on November 4, 1922, and was filed in proper time, the result would be the same. The decree of October 6, 1922, dismissed the bill of December 2, 1921, as being without equity and insufficient in law.

"The rule is well settled that when a demurrer to a bill is sustained, with leave to the plaintiff to amend, if the plaintiff exercises that privilege, he cannot afterwards be heard to object to the decree on the original bill." *Tidewater Rwy. Co.* v. *Hurt,* 109 Va. 204, 63 S. E. 421; *Davis* v. *Marshall,* 114 Va. 193, 76 S. E. 316, Ann. Cas. 1914B, 1025. This rule in this case is not affected by the provisions of section 6116 of the Code. It is there provided that where a demurree amends his pleading he shall not be deemed to have waived his right to stand upon his pleading before the amendment, provided the order of the court shows that he objected to the ruling of the court sustaining the demurrer. No such objection or reservation is embodied in any decree in this suit.

[12] Not only is this true, but the doctrine *stare decisis* applies. The court, having decided upon the facts as set out in the bill of December 2, 1921, was not called upon to again decide upon those identical facts, because they were set out in another and subsequent bill.

As was said by Judge Burks in *Steinman* v. *Clinch-field Coal Co.*, 121 Va. 611, 93 S. E. 684: "It would greatly increase the labor of appellate courts and costs to litigants if questions once considered and determined could be reopened on any subsequent appeal."

It follows that the demurrers to the bill of November 4, 1922, and the motion to dismiss it should have been sustained. There is no error in the decree appealed from.

*Affirmed.*