# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## FICKLEN, ET ALS. V. CITY OF DANVILLE, ET ALS.

February 25, 1926.

1. APPEAL AND ERROR—*Suit to Enjoin Issuance of Municipal Bonds—Effect of Appeal.*—The pendency of an appeal in a suit to enjoin the issuance of municipal bonds operates practically as a complete inhibition upon the authorities of the city to issue the bonds involved, as it is entirely out of reason to expect any investor to put his money into the bonds, so that it is impossible for the city to undertake to issue and negotiate any of the bonds.

2. MUNICIPAL SECURITIES—*Suit to Enjoin Issuance of Bonds—Presumption that Officers Will Keep Faith with the City.*—Where the municipal records and ballots used by the people at an election furnished complete information as to the character and purport of municipal bonds approved by the voters at the election, it cannot be presumed that any municipal officers or the council of the city would in any event undertake to break faith with the people.

3. MUNICIPAL ELECTIONS—*Suit to Enjoin Issuance of City Bonds—Surrender by City of Claim to Issue Bonds—Appeal and Error—Moot Questions—Case at Bar.*—The instant case was a suit to enjoin the issuance of city bonds under an election in June 1924. The bill was dismissed and an appeal was allowed. While the appeal was pending the city authorities ordered a new election in 1925, submitting the same questions to the voters as were submitted by the election of 1924. It was evident that the city had unmistakably surrendered all claim to the right to issue bonds pursuant to the election held in June, 1924, and has abandoned any intention to do so.

   *Held:* That there was no longer any matter of controversy existing between the parties; that the question had become moot, and that the appeal should be dismissed.

4. MUNICIPAL SECURITIES—*Necessity and Propriety of an Issuance of Bonds is not a Question for the Court.*—The necessity and propriety of an issuance of city bonds presents a question of public policy which the courts cannot consider. The courts can only undertake to adjudicate whether the mode of ascertaining the will of the citizens is in conformity to law.

5. COSTS—*Allowance of Costs—Common Law and Statutes.*—The allowance of costs depends entirely upon statute, no costs being allowed in

any case at common law.   Section 3528 of the Code of 1919 provides in mandatory terms that, in every case in an appellate court, costs shall be recovered by the party substantially prevailing.   No other provision being made for the recovery of costs, they can only be allowed in favor of either party in the appellate court, in cases in which there is an adjudication, and then to the party "substantially prevailing."

6.  COSTS—*Question Becoming Moot.*—When it is shown that the controversy in any case has ceased to exist, leaving only moot questions, there can be no recovery of costs by either side in the appellate court, as neither party can be said to have substantially prevailed on the appeal.

## ON PETITION FOR REHEARING.

7.  APPEAL AND ERROR—*Suit to Enjoin Issuance of Municipal Bonds—Moot Questions—Case at Bar.*—Where a city council submitted to the people of the city the decision of the question whether bonds should be issued under the claimed authority of a previous election and the vote was against it, the question at issue between the parties in a suit to enjoin the issuance of bonds under the former election became moot.

8.  MOOT QUESTIONS—*General Rule.*—Courts pass upon concrete cases, and not abstract propositions of law, and ought not to depart from the universal rule that the duties and powers of courts are limited to the determination of rights actually controverted in the particular cases before them.

9.  COSTS—*"Substantially Prevailing."*—It is unquestionably settled law in Virginia that costs can only be awarded to the party who "substantially prevails" on the appeal.   What is meant by "substantially prevailing" has frequently been decided by the Court of Appeals in accordance with the essence and right of the case, upon its disposal by the appellate court, independent of the technical right of either party to an affirmance or a reversal.

10.  COSTS—*Appeal—Suit to Enjoin Issuance of City Bonds.*—In the instant case the appeal was not improvidently awarded.   The controversy has not been removed by any event beyond the control of either party.   The appellants announce themselves ready and eager to secure the judgment of the court upon their case, and insist that the law is with them.   They have done nothing to prevent a hearing. Affirmative action, in effect yielding to the contention of the appellants, taken by the appellees after the case was docketed in the appellate court was the sole occasion of the necessity of dismissing the case on appeal.   While this of itself would not perhaps justify a departure from the general rule that ordinarily costs would not be decreed to either party; yet when the case in the appellate court

has proceeded to the point where counsel were before the court upon the call of the case for argument, and the appellees then bring to the attention of the court the fact that they had abandoned their contention made before the lower court, and the court is therefore constrained to dismiss the appeal, this is equivalent to the appellants substantially prevailing.

11. COSTS—*Appeal—Suit to Enjoin Issuance of City Bonds—Dismissal of Appeal—Case at Bar.*—In the instant case, a suit to enjoin the issuance of city bonds, the injunction was denied. Complainants were held entitled to recover their costs on appeal where the appeal was dismissed because the city abandoned its contention by submitting the question again to the voters after the cause was docketed in the appellate court.

Appeal from a decree of the Circuit Court of the city of Danville. Decree for defendant. Complainant appeals.

*Dismissed.*

The opinion states the case.

*Carter & Williams,* for the appellants.

*A. M. Aiken* and *Withers & Brown,* for the appellees.

CRUMP, P., delivered the opinion of the court.

Pursuant to a resolution adopted by the council of the city of Danville on March 10, 1924, the corporation court of that city entered an order for the holding of a special election on June 10, 1924, the date of the regular municipal election in said city, for the purpose of submitting to the voters of the city the question of giving authority to the city to issue bonds to the amount of $500,000.00 for three specified objects. The resolution of the city council had designated June 10, 1924, as the date for the special election to be held.

The resolution of the city council directed three separate questions to be submitted to the voters, one

covering an issuance of bonds amounting to $350,000.-00, another of $100,000.00, and the third of $50,000.00; the three contemplated issues being for different designated purposes.

The frame of the question was as follows:

"Shall the city of Danville issue its bonds in the amount of $350,000.00, pursuant to the city charter, for the purpose of building, constructing and improving public free schools in the city of Danville, the said bonds to be payable serially in twenty-five equal annual installments, beginning one year after date of the bonds, and to bear interest at a rate not exceeding five and one-half per cent per annum, payable semi-annually?"

The other two submissions were in the identical language with the above except that the one relative to the $50,000.00 issue stated the bonds were "for the purpose of building and improving sewers in the city of Danville," and the third providing for the $100,000.00 issue expressed the purpose to be "paving, repaving and improving certain streets in the city of Danville."

At the election held on June 10th, the three bond issue questions were submitted to the voters of the city. The corporation court entered an order finding and adjudging that two-thirds of those voting, including a majority of the qualified voters of the city owning real estate, had cast their votes for the bond issues. A copy of this order having been certified to the city council, ordinances were offered in that body looking to proper authorization of the municipal authorities to issue and market the bonds.

Upon the presentation of a bill in equity on behalf of the appellants here, fifteen citizens and taxpayers of the city of Danville, as complainants, against the city

and also the mayor and other municipal officers of the city as defendants, the judge of the circuit court awarded a preliminary injunction on August 24, 1924, restraining the defendants from taking any steps to issue, negotiate or sell the bonds under the proceedings mentioned. The bill alleged, for reasons set out in detail, that the election of June 10th was illegally held and that a majority of the qualified voters of Danville owning real estate had not cast their votes for the bond issues.

On October 31, 1924, at the succeeding term of the circuit court, the case was heard and argued upon the bill and amendments thereto, upon the demurrer and the answer of the defendants, and the court entered a final order sustaining the demurrer and dismissing the bill of complaint at the cost of complainants. From this order an appeal was allowed.

[1] At the time an appeal was allowed a supersedeas was also granted and a supersedeas bond in a large amount required. Upon the application of the appellants within a few days thereafter, the petition for a supersedeas was withdrawn, in consequence of which the judge of the appellate court allowing the appeal restricted it to a writ of appeal alone and reduced the bond from seventy-five thousand dollars to five thousand dollars. We agree, however, with the position taken in argument here by the attorney for the city of Danville that the pendency of an appeal to the appellate court in a case of this character operated practically as a complete inhibition upon the authorities of the city to issue the bonds involved. It is so manifest as to be beyond question that under the circumstances it was entirely out of reason to expect any investor to put his money in the bonds, so that it was impossible for the city to undertake to issue and

negotiate any of the bonds. If the city therefore desired a speedy settlement of the question whether the contemplated public improvements were to be undertaken, no reliance could be placed upon the possibility of raising funds for that purpose from the bond issue in question in this case, so long as the appeal was pending.

The following circumstances are now brought to the attention of the court by proper evidence. It appears that in March, 1925, the city council of Danville adopted ordinances providing for a special election to authorize bonds amounting to $500,000.00 in three separate series for the same three purposes for which the prior election had been held. This election was ordered by the corporation court held on May 5th, and the court certified to the council that the requisite number of qualified voters holding real estate had voted for the bond issues by a considerable majority beyond two thirds. The questions submitted to the voters at the election on May 5, 1925, were identical with the three questions hereinabove set out as to the $350,000.00, $50,000.00 and $100,000.00 issues of bonds respectively, with the exception that to each question was added the following language: "And said bonds to be issued instead of and not in addition to the bonds for this purpose authorized at the election held June 10, 1924.'" On June 24, 1925, the issuance and sale of the three sets of bonds was authorized by the city council, except that as to the school bonds only $150,000.00 was then authorized, and these bonds were subsequently under the authority of this ordinance executed, negotiated and delivered.

In the ordinance of March 12, 1925, directing the submission of the issues to a vote of the electorate, and authorizing the corporation court of the city to

order an election, the ballot as to each of these three classes of bonds, as recited in the ordinance itself, was in the following form:

"Shall the city of Danville issue its bonds in the amount of fifty thousand ($50,000.00) dollars, pursuant to the city charter, for the purpose of building and improving sewers in the city of Danville, the said bonds to be payable serially in twenty-five equal annual installments beginning one year after the date of the bonds, and to bear interest at the rate of not exceeding five and one-half per cent per annum, payable semi-annually, the said bonds to be issued instead of and not in addition to the bonds for this purpose authorized at the election held June 10, 1924?

"FOR BOND ISSUE

"AGAINST BOND ISSUE."

Orders were entered in the corporation court, relative to the three sets of bonds, on May 9, 1925, in accordance with section 3088 of the Code of Virginia. Each of these orders sets out in terms the questions submitted to the people in the form just above transcribed.

In the elaborate ordinances approved June 24, 1925, reciting prior proceedings, authorizing the issuance of the respective sets of bonds, and containing a form for the bonds, the questions submitted at the election on May 5th are again transcribed in full.

[2] Under these circumstances the records of the court, the municipal records and the ballots used by the people at the election of the council furnish, in the most ample manner, complete information as to the character and purport of the bonds approved by the voters at the election on May 5, 1925. We cannot

presume that any municipal officer or the council of the city would in any event undertake to break faith with the people of Danville.

[3] The object of the suit in the instant case is to enjoin the issuance of bonds under the election in June, 1924. We cannot be expected to ascertain whether any one of the questions now raised would effect in any way the proceedings for the issuance of bonds in 1925, and it is beyond the province of the court to pass upon the issue in the present case for such a purpose.

It is evident that the city has unmistakeably surrendered all claim to the right to issue bonds pursuant to the election held in June, 1924, and has abandoned any intention to do so.

It is perfectly manifest that there is no longer any matter of controversy existing between the parties as to the authorization or issuance by the city of bonds under the questions submitted to the voters in the election of June 10, 1924. No court would hesitate for a moment to enjoin the authorities of the city of Danville from taking any steps under such circumstances in consequence of the proceedings held in 1924. It is not to be presumed as a practical matter that any investor would be so unwise as to accept bonds if the municipal officers of Danville would undertake to issue them under the proceedings of 1924, in the face of the fact that the city had abandoned all right derived from that election and had ordered a second election. We are convinced that the matters in issue between the parties to this cause have been placed beyond the realm of controversy, and are nonexistent.

If we should undertake to pass upon the questions presented in the petition for an appeal our opinion would be merely a decision upon moot questions.

It is thoroughly established in Virginia that under such circumstances the appellate court should refrain from passing upon controverted questions which have been removed, by occurrences taking place since the judgment of the trial court.

[4] It appears from the affidavits submitted in regard to this matter, that there is violent opposition on the part of many citizens of Danville to the issuance of bonds for any purpose, and to the consequent burden placed upon the city of providing for the bonds by taxation. The necessity and propriety for such action on the part of the city presents altogether a question of public policy which the court cannot consider. The courts can only undertake to adjudicate whether the mode of ascertaining the will of the citizens is in conformity to law. Whether the election of June, 1924, was properly and legally authorized and held, and whether the bonds voted upon at that election can be validly issued, are questions no longer in controversy between the parties. There having been no supersedeas awarded in this case, the city could have validly issued the bonds, the issuance of which had been sought to be enjoined. If this had been done and the bonds had been issued and paid for, the relief in the nature of an injunction against the city and its officials, to be afforded by a reversal of the case, would be entirely ineffective, and the rule in such a case is to dismiss the appeal. *Davis* v. *Mayor, &c.,* 119 Ga. 57, 45 S. E. 724.

Surely then where the converse appears and the defendant in the injunction suit has yielded to the complaint of the plaintiff and abandoned the effort and intention to continue the act sought to be enjoined, the questions involved in the cause become *a fortiori* moot questions.

Following therefore the rules laid down for the guidance in prior cases in which it became apparent to the appellate court that the controversy out of which the appeal grew no longer existed, we can only dismiss the appeal and take no further action. *Levy* v. *Kosmos*, 129 Va. 446, 106 S. E. 228; *Branscome* v. *Cunduff*, 123 Va. 352, 96 S. E. 770; *Gilmer* v. *Francisco*, 131 Va. 47, 108 S. E. 669; *Wallerstein* v. *Brander*, 136 Va. 543, 118 S. E. 224; Burks' Pl. & Prac. (2nd Ed.) 765; *New Orleans* v. *Lakowsky*, 158 La. 70, 103 So. 513.

[5, 6] It is insisted that under the circumstances here the appellees should be made to pay the costs of the appeal, as the cost of the transcript and of printing the record amounts to quite a considerable sum.   There is much equity in this claim, but we must follow the precedents in similar cases, and the law is well settled otherwise.

The allowance of costs depends entirely upon statute, no costs being allowed in any case at common law.   Section 3528 of the Code of Virginia provides in mandatory terms that, in every case in an appellate court, costs shall be recovered by the party substantially prevailing.   No other provision being made for the recovery of costs, they can only be allowed in favor of either party in this court, in cases in which there is an adjudication, and then to the party "substantially prevailing." *Scott* v. *Doughty*, 130 Va. 523, 107 S. E. 729.

We can find no precedent in Virginia for departing from this rule of law.   The only relief therefore we can afford the appellants is to deny a recovery of costs to the appellees.

It was held in the above cited and other cases that, when it is shown that the controversy in any case has ceased to exist, leaving only moot questions, there can

be no recovery of costs by either side in this court, as. neither party can be said to have substantially prevailed on the appeal.

The appeal therefore will be dismissed without costs. to either party.

*Dismissed.*

## ON PETITION FOR REHEARING.

Richmond, April 29, 1926.

CRUMP, P., for the court:

[7] The court is satisfied that the questions at issue between the parties in this case have become moot, insofar as they have any bearing upon the relative rights of the parties arising out of the prayer of the bill for an injunction. In effect the city council of Danville, by its ordinances, adopted in 1925, submitted to the people of the city, under the form of ballot. used in the election then held, the decision of the question whether bonds should be issued under the claimed authority of the election in 1924. The vote was against it, and there is no way in which the city can avoid the result of that decision of the people in 1925 taken upon the initiative of the council. It is beyond the realm of practical or legal possibility that the council should or could issue bonds by reason of any authority claimed to exist in consequence of the election of 1924.

[8] Courts pass upon concrete cases, and not abstract propositions of law, and ought not to depart. from the universal rule that the duties and powers. of courts are limited to the determination of rights. actually controverted in the particular cases before them.

[9] The matter of the character of the order entered, or to be entered, in this case dismissing the appeal presents a different question.    It is unquestionably settled law in Virginia that costs can only be awarded to the party who substantially prevails on the appeal. What is meant by "substantially prevailing" has frequently been decided by the Court of Appeals in accordance with the essence and right of the case, upon its disposal by the appellate court, independent of the technical right of either party to an affirmance or a reversal.    Thus in *Litz* v. *Rowe*, 117 Va. 752, the appellants had filed a petition in a partition suit claiming title to and ownership of the land to be partitioned. The trial court overruled a demurrer to the petition and held it had jurisdiction of the claims set up by petitioners, and in subsequent proceedings, including the trial of an issue out of chancery, those claims were denied and they appealed.    The Court of Appeals held, apparently without an assignment of cross error, that the equity court had no jurisdiction as to the claim of title set up by petitioners, and that proceedings subsequent to the filing of the petition should be disregarded.    This necessitated a reversal of the case. Technically this carried with it costs for the appellants, as the reversal showed that they were on the record apparently the parties prevailing.    Nevertheless, the court says:    "The costs in this court, however, will be decreed against the appellants.    This cause is brought here by them, and the appellees having prevailed on the issue out of chancery are not now complaining, but the reversal, though at their instance, is not upon any error assigned by them but upon an error which they invited and which was committed over the protest of the appellees.    Clearly, therefore, the appellants are not the parties substantially prevailing,

and they should be required to pay the costs on appeal." See also *Bryan* v. *Salyards,* 3 Gratt. (44 Va.) 179.

[10, 11] As stated in the opinion of the court we can find no precedent in Virginia for allowing costs to either party in a moot case. However, we find no case in which the matters at issue became moot questions in this court under such circumstances as exist here. The appeal was not improvidently awarded. The controvery has not been removed by any event beyond the control of either party. The appellants announce themselves ready and eager to secure the judgment of the court upon their case, and insist that the law is with them. They have done nothing to prevent a hearing. Affirmative action, in effect yielding to the contention of the appellants, taken by the appellees after the case was docketed in the appellate court was the sole occasion of the necessity of dismissing the case on appeal. This of itself would not perhaps justify a departure from the established rule that ordinarily costs should not be decreed to either party. But it further appears here that the facts themselves, which the appellees rely upon to show that no controversy further exists, imply that they have abandoned their intention and desire to rely upon the correctness of the trial court's decree. When the case in the appellate court has proceeded to the point where counsel are before the court upon the call of the case for argument, and the appellees then bring to the attention of the court the fact that they had abandoned their contention made before the lower court, and the court is therefore constrained to dismiss the appeal, is it not equivalent to a "substantially prevailing" as to the appellants, who thus gain all they sought by the appeal? By the institution of the suit

in the court below, by the appeal and by the abandonment of defense to the case on the part of the appellees, the appellants have prevailed in the object of the litigation commenced by them, which was to prevent the issuance of bonds under authority of the election held in 1924, notwithstanding the nature of the order entered by this court.   The appellants have accomplished everything they sought in the litigation.   We are of opinion that under the circumstances presented in the instant case, the appellants should be held to have substantially prevailed in this court, although the appeal is dismissed, and therefore they are entitled to recover costs against the appellees; and the final order of the court will be entered accordingly.

The question of costs was argued before the court on the hearing and the foregoing may be taken as an addition to the opinion of the court touching that question.

A rehearing however as asked for by the appellants is denied.

*Rehearing denied.*