COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judges AtLee and Friedman
Argued at Fredericksburg, Virginia

UNPUBLISHED

STEVE GASKINS, ROLAND SMITH,
 MIKE MANFREDI, KEVIN ELWELL AND
 ADAM JEANTET

MEMORANDUM OPINION* BY
v.      Record No. 1074-22-4       JUDGE FRANK K. FRIEDMAN
JUNE 13, 2023

MCLEAN BIBLE CHURCH


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
David Bernhard, Judge

Rick Boyer (Integrity Law Firm, PLLC, on briefs), for appellants.

Timothy J. Taylor (Brandon H. Elledge; Caitlin A. Eberhardt;
Holland & Knight LLP, on brief), for appellee.


Steve Gaskins, Roland Smith, Mike Manfredi, Kevin Elwell, and Adam Jeantet

("appellants") challenge the Circuit Court of Fairfax County's order finding that the breach of

contract claim raised in appellants' second amended complaint is moot, granting McLean Bible

Church's ("MBC") plea in bar, and dismissing the complaint with prejudice.

BACKGROUND[1]

Appellants are members of MBC, a nondenominational church in Vienna, Virginia.

MBC has a constitution that governs, as relevant here, the requirements of church membership

and the procedures for electing MBC's governing body, the Board of Elders (the "Board").

---

* This opinion is not designated for publication. *See* Code § 17.1-413.

[1] Where no evidence is taken in support of a plea in bar, "the facts stated in the plaintiff's [complaint] are deemed true." *Massenburg v. City of Petersburg*, 298 Va. 212, 216 (2019) (alteration in original) (quoting *Lostrangio v. Laingford*, 261 Va. 495, 497 (2001)).

Under MBC's constitution, the Board consists of at least six elders, who are elected to three-year terms at MBC's annual June congregational meeting. The elders serve staggered terms such that one-third of the Board is elected each year.

According to the MBC constitution, any active member who is at least 16 years old may vote. Inactive members are those members who have not attended church services for eight consecutive weeks "without reasonable excuse." It is the Board's responsibility to make decisions regarding MBC's membership rolls. Inactive members may not vote or hold office.

Before seeking election to the Board, one must be nominated by an active MBC member. A six-member nominating committee appointed by the Board then considers whether each nominee meets the qualifications to be an elder. The Board separately considers the qualifications of each nominee approved by the nominating committee and submits to the congregation a list of final nominees at least two weeks before the June congregational meeting.

Any nominee receiving 75% or more of the votes cast at the June meeting becomes a member of the Board. If fewer than six of the nominees exceed 75% of the vote, the Board "shall submit additional nominations to the congregation for approval within ninety (90) days," and the Board "shall be required to convene a congregational meeting and request a vote of confidence" should the new slate of elders also fail to receive at least 75% of the vote. Should the Board not receive at least 75% of the confidence vote, the congregation selects a new nominating committee to nominate a new Board for congregational approval.

The controversy in this case involves the June 2021 Board election and its aftermath. Although it determined that a large number of nominees were qualified to serve as elders, the Board "submitted only three handpicked candidates" at the June 2021 meeting. According to the operative second amended complaint,[2] despite having "no practical means to determine that a

_____

[2] Appellants first filed a complaint against MBC in July 2021.

member has missed eight consecutive weeks" and the suspension of in-person worship services due to COVID-19, the Board "purge[d] members by designating them 'inactive' on an arbitrary basis, with no record that the members had missed eight consecutive Sundays, and without investigation into whether the members had 'reasonable excuse.'" The Board also "required a large number of members to cast 'provisional' ballots" at the June 2021 election. The Board did so, the complaint claimed, "with the sole intent of predetermining the outcome of the election." Elwell and Jeantet were among those told they could not vote due to their inactive status. The Board's nominees failed to obtain the required 75% of the congregational vote at the June election.

The Board nominated the same three candidates for a vote in July 2021 and announced that members would no longer be permitted to vote by secret ballot. At the July 2021 election, the Board required Elwell and Jeantet to submit provisional ballots. This time, the Board's nominees exceeded 75% of the vote and joined the Board.

Appellants filed suit, alleging that the constitution was a contract between MBC and its members and that MBC breached that contract by denying some of its members the voting rights to which they were entitled.[3] Appellants requested injunctive relief: (1) ordering the Board to conduct all future elections by secret ballot; (2) declaring the 2021 election invalid and ordering a new election for the three elder positions; (3) ordering the Board to submit to a vote of confidence should the new nominees not receive 75% of the vote; (4) requiring the Board to allow any members on MBC's active roll as of March 1, 2020, to vote in the new election; (5) prohibiting voting by any members added to MBC membership rolls after the July 2021

_____

[3] Appellants also alleged estoppel and waiver with respect to their breach of contract count, as well as a separate fraud count. The circuit court dismissed without leave to amend the fraud count and the estoppel and waiver portion of the breach of contract count. Appellants do not appeal that decision.

- 3 -

election; (6) providing vote tabulations to the congregation; (7) appointing a special commissioner to oversee the election; and (8) disclosing to the congregation the names of all persons placed on inactive status or removed from the membership roll after January 1, 2021.

After about ten months of litigation, MBC crafted a "Plan for Lawsuit Resolution" (the "plan") establishing procedures for the June 2022 Board election. Under the plan, the three disputed 2021 elders would resign their positions and stand for reelection alongside three new nominees. The election would be conducted by secret ballot and any active member—including members who were on MBC's active roll as of March 1, 2020—would be allowed to vote provided they "before God still claim[ed] to be an active member of" MBC. If the nominees received under 75% of the vote, MBC pledged to follow the constitutional procedures, "including a vote of confidence contingency." MBC announced a special congregational meeting in May 2022 to vote on whether to approve the plan, "as well as voting on new members." Notifications of this meeting and the June meeting were sent by email to MBC's active membership database. The congregation approved the plan at the May meeting with over 84% of the vote. All six elder nominees received over 75% of the vote at the June 2022 meeting.

Following the June 2022 election, MBC filed a plea in bar asserting that the case was now moot. MBC attached to their plea in bar a copy of the plan and a chart showing the results of the June 2022 election. MBC's chart indicated that all six nominees would have received over 75% of the vote even if all new members who had been admitted in May 2022 had been excluded and assuming that all such members had voted to approve the nominees.

The circuit court held a hearing on MBC's plea in bar at which appellants conceded that the contested elders had resigned and been reelected. Neither side presented evidence at the hearing. After argument, the circuit court found that the case was moot but did not make any

specific findings.  It entered a terse one-page order granting MBC's plea in bar and dismissing the entire case with prejudice.  This appeal follows.

ANALYSIS

The Evidence on Appeal

Appellants first argue that the circuit court erred by granting MBC's plea in bar because factual disputes exist and MBC provided no evidence concerning those disputes.[4]  We therefore begin by establishing what evidence was available for the circuit court to consider in ruling on the plea in bar.

"A plea in bar asserts a single issue, which, if proved, creates a bar to a plaintiff's recovery." *Massenburg v. City of Petersburg*, 298 Va. 212, 216 (2019) (quoting *Hawthorne v. VanMarter*, 279 Va. 566, 577 (2010)).  "The party asserting the plea in bar bears the burden of proof." *Id.*  "Where no evidence is taken in support of the plea, the trial court, and the appellate court upon review, must rely solely upon the pleadings in resolving the issue presented." *Robinson v. Nordquist*, 297 Va. 503, 513-14 (2019) (quoting *Tomlin v. McKenzie*, 251 Va. 478, 480 (1996)).  "In doing so, the facts stated in the plaintiff's [complaint] are deemed true." *Massenburg*, 298 Va. at 216 (alteration in original) (quoting *Lostrangio v. Laingford*, 261 Va. 495, 497 (2001)).  "This approach results in functionally de novo review of the trial court's judgment." *Id.*

In determining whether the case is moot, the circuit court could rely on the attachments to MBC's plea in bar, including the plan and the chart showing the results of the June 2022

---

[4] MBC argues that appellants' objection below was insufficient under Rule 5A:18 to preserve their claim that the evidence was insufficient to establish mootness.  We disagree.  Appellants argued below: "Even the relief they're saying they gave us, that . . . the previous members could vote, that it was a secret ballot, . . . it is conclusory statements by [MBC] with no evidence to support."  Appellants plainly put the circuit court on notice that they believed—in a proceeding where MBC put on no evidence and where the averments in the complaint are taken as true—that MBC lacked proof to carry its burden of establishing mootness.

election. *See City of Chesapeake v. Cunningham*, 268 Va. 624, 633 (2004) (explaining that the pleadings include the attachments to a plea in bar). The circuit court further could rely on appellants' concessions, specifically their concessions that the disputed elders resigned and were reelected at the June 2022 election. *See Logan v. Commonwealth*, 47 Va. App. 168, 172 (2005) (en banc) ("On purely factual questions . . . we can and do rely on the adversarial process to sort out the contested and uncontested aspects of the case before we begin our responsibility of applying *de novo* the correct legal principles.").[5]

## Standard of Review

"Generally, a case is moot and must be dismissed when the controversy that existed between litigants has ceased to exist." *Va. Mfrs. Ass'n v. Northam*, 74 Va. App. 1, 18 (2021) (quoting *Daily Press, Inc. v. Commonwealth*, 285 Va. 447, 452 (2013)). "No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute 'is no longer embedded in any actual controversy about [appellants'] particular legal rights.'" *Id.* at 19 (alteration in original) (quoting *Ingram v. Commonwealth*, 62 Va. App. 14, 21-22 (2013)). A dispute will also be considered moot where the relief sought is impossible to award. Mootness can occur from "intervening events that overtake litigable controversies." *Reston Hosp. Ctr., LLC v. Remley*, 63 Va. App. 755, 766 (2014).

## Appellants' Request to Reconfigure and Re-Do the 2021 Election is Moot

We turn to whether MBC carried its burden of establishing mootness. Appellants' complaint seeks to turn back the clock and reconstruct the disputed 2021 election. The specific

---

[5] While we are bound by factual concessions made below, "we are not bound by concessions of law by the parties." *Doulgerakis v. Commonwealth*, 61 Va. App. 417, 419 (2013) (quoting *Epps v. Commonwealth*, 47 Va. App. 687, 703 (2006) (en banc), *aff'd*, 273 Va. 410 (2007)). "A party can concede the facts but cannot concede the law." *Cofield v. Nuckles*, 239 Va. 186, 194 (1990).

relief repeatedly requested by appellants on brief and at oral argument is a return to conditions prior to the June 2021 vote—and a corresponding re-vote under these restored circumstances. Even as appellants request this result, they acknowledge that this would potentially disenfranchise hundreds of new members who have joined the church in recent years, while necessitating a search for numerous departed members who may or may not wish, at this time, to return to MBC or be involved in the election process. Ultimately, appellants' goal of going back in time to 2021 conditions and fashioning a new election from voter/member rolls of the past is not a feasible remedy.

Case law supports the conclusion that when the specific relief requested in a complaint is no longer available, the issue is moot. MBC offers extensive precedent supporting this proposition, particularly with respect to disputed elections that have "come and gone." *See, e.g.*, *Thompson v. DeWine*, 7 F.4th 521, 524 (6th Cir. 2021) ("Without a time machine, we cannot go back and place plaintiffs' initiatives on the 2020 ballot. So plaintiffs' first request for injunctive relief is moot."); *Ariz. Green Party v. Reagan*, 838 F.3d 983, 987 (9th Cir. 2016) ("The 2014 election has come and gone, so we cannot devise a remedy that will put the Green Party on the ballot for that election cycle."); *Operation King's Dream v. Connerly*, 501 F.3d 584, 591 (6th Cir. 2007) (case moot when "the opportunity to keep Proposal 2 off the November 2006 general election ballot has long since passed"); *Meyer v. Jacobsen*, 510 P.3d 52, 57 (Mont. 2022) (claims "specific to the 2020 election, which concluded nearly two years ago," were moot); *Jackson v. Bd. of Election Comm'rs*, 975 N.E.2d 583, 593 (Ill. 2012) ("[C]onclusion of an election cycle normally moots an election contest.").

On brief and at oral argument, MBC relied heavily on *Owens v. City of Virginia Beach*, No. 1707-17-1, 2018 WL 3732420 (Va. Ct. App. Aug. 7, 2018), a case where owners of a

condominium hired a contractor to replace part of their roof.[6] The plaintiffs argued that the contractor's work should not have passed inspection. *Id.* at \*2-3. However, during litigation, the plaintiffs hired a second contractor who redid the roof work. *Id.* at \*2. As a result, this Court held that the case was moot because the remediation which was desired by the plaintiffs became impossible due to the allegedly faulty roof having been fixed. *Id.* at \*4.[7] MBC argues that the 2021 church election is like the disputed roof repair in *Owens*; after the new, fixed roof was in place, complaints regarding the disputed inspection of the prior repair job were no longer a justiciable controversy. Here, appellants have recognized that the winners of the 2021 election all resigned and that a new election was held. Ultimately, the 2021 election has been superseded by the 2022 election. The "time machine" remedy sought by appellants of reconstructing the 2021 voter universe and holding a new 2021 election is simply not feasible. *See DeWine*, 7 F.4th at 524.

At oral argument, the parties confirmed that hundreds of new members have joined (and left) the church since 2021. The factual record supports the conclusion that the 2021 election is

---

[6] Unpublished opinions were relied upon by the parties, and *Owens* was argued at length at oral argument. *Mitchell v. Commonwealth*, 73 Va. App. 234, 248 n.9 (2021) ("Although not binding precedent, unpublished opinions can be cited and considered for their persuasive value." (quoting *Blowe v. Commonwealth*, 72 Va. App. 457, 468 n.10 (2020))).

[7] Another case relied upon by MBC is *DeFunis v. Odegaard*, 416 U.S. 312, 314 (1974), in which a student applied for admission to law school as a first-year. He was denied admission and thereafter commenced suit, contesting that the criteria employed by the university discriminated against him on account of race. *Id.* He asked the trial court to issue a mandatory injunction to have him admitted "on the ground that the Law School admissions policy had resulted in the unconstitutional denial of his application for admission." *Id.* The trial court granted the requested relief, and petitioner entered the school as a first-year law student. *Id.* The law school was successful on appeal, and the case was reversed on the ground that the "Law School admissions policy did not violate the Constitution." *Id.* at 315. By this time, DeFunis was a second-year student. *Id.* DeFunis then petitioned the Supreme Court of the United States for a writ of certiorari. *Id.* By the time the certiorari was considered, DeFunis was a third-year student. *Id.* The Supreme Court held that DeFunis was in his last quarter of his final year of law school and all parties agreed that any decision on the substantive issues would not prevent his graduation; therefore, the case was moot. *Id.* at 319-20.

long past; moreover, appellants have acknowledged the winners of that election resigned and a subsequent 2022 election occurred. We agree with MBC that, with respect to appellants' desire to institute a reformulated 2021 election, the relief is unavailable and the request is moot.[8]

<u>The Entire Suit is Not Moot on this Record</u>

MBC suggests that, given our determination that appellants' request for a 2021 "do over" election is not an available remedy, this should end the inquiry and bar appellants' entire suit. On this point, we disagree with MBC. It is well-settled that when plaintiffs seek specific equitable relief that is unavailable, a court retains the ability to provide general relief that is consistent with the pleadings. *Worsham v. Worsham*, 74 Va. App. 151, 175 (2022) ("[A] court in equity may properly grant appropriate relief not specifically requested." (quoting *Johnson v. Buzzard Island Shooting Club, Inc.*, 232 Va. 32, 36 (1986))).

> It has long been held that, where a party prays for both special and general relief and no relief may be granted under the special prayer, the court may, under the general prayer, grant any proper relief consistent with the case as stated in the bill. *See Woolfolk v. Graves*, 113 Va. 182, 197 (1911), *aff'd on rehearing*, 113 Va. 182, 198 (1912). "'[I]f the bill contains charges putting facts in issue that are material, the plaintiff is entitled to the relief which these facts will sustain under the general prayer . . . .'" *Southeast Lumber Co. v. Friend*, 158 Va. 863, 869 (1932) (citation omitted).

*Johnson*, 232 Va. at 36; *see also Winston v. Winston*, 144 Va. 848, 858-59 (1925); *Smith v. Sink*, 247 Va. 423, 425 (1994); *Wright v. Castles*, 232 Va. 218, 222 (1986).

Here, appellants' foremost contention throughout the litigation is that the Board improperly, and in violation of MBC's constitution, designated active members as inactive, thus

---

[8] To the extent appellants seek relief aimed solely at regulating the terms of the desired "do over" 2021 election, such demands also would be moot. Thus, for example, appointing a special commissioner to oversee the election and barring current members who joined MBC after the 2021 election from voting in the requested "do over" election would be moot. Similarly, the demand that the Board submit to a vote of confidence if the "do over" election did not yield favorable results would also be moot.

precluding them from voting. In the second amended complaint, appellants alleged that "the Elders have continued to place dissenting members of MBC into 'inactive' status since the July [2021] vote, with no evidence that the members have missed the required eight consecutive meetings, and solely on the basis of having voted the 'wrong' way on July 18." This allegation, if taken as true as is required at this stage, demonstrates that the conflict at the heart of this litigation is broader than merely the 2021 election. It involves alleged ongoing violations of MBC's governing documents.

The only evidence MBC presented to dispute this point was the plan, which provided that individuals on MBC's active roll as of March 1, 2020, would be permitted to vote in the 2022 election if they claimed to still be an active member.[9] The plan, however, was just that—a plan. Intentions alone cannot carry MBC's burden of establishing mootness in the absence of proof of its implementation. The record is silent as to implementation and notice of the plan. While appellants did concede that the elders resigned and were reelected at a new election, they did not concede that MBC afforded them the voting rights to which they claim entitlement. Appellants did not agree that allegedly disenfranchised voters were notified of the 2022 election nor that they were permitted to vote in the election. And the circuit court made no explicit factual findings in this regard to which we may defer.[10] Nor did MBC present evidence that it had

---

[9] Indeed, the notice regarding the "curing" 2022 election purportedly went to "active" members on the church rolls. This would suggest—as appellants' counsel argued—that members designated as "inactive" did not receive notice of the vote. There is no evidence on the record with respect to this point, but it is MBC's burden to establish mootness here. *Massenberg*, 298 Va. at 216.

[10] MBC argues that all of appellants' specific requests for relief in the second amended complaint pertained solely to the 2021 election. To the contrary, one of appellants' requests for injunctive relief was that MBC disclose the identity or number of members designated as inactive after January 1, 2021. As MBC conceded below, the plan did not provide for that specific relief. We express no opinion as to the merits of appellants' request for more transparency. We observe only that this request was not tied to a specific election.

ceased the active membership purges which appellants alleged continued even *after* the 2021 election. Appellants sought injunctive relief with respect to these alleged ongoing violations.

MBC asserts that all of these ongoing violation claims are mooted by the 2022 election and the resignation of the elders elected in the 2021 proceedings. The cases which MBC cites to support this proposition, however, do not support this position. *Hamer v. Commonwealth*, 107 Va. 636, 637-38 (1907), relied upon by MBC, concerned a dispute about who had won an election for an office for which the term had expired. In *Ficklen v. City of Danville*, 146 Va. 426, 428-29 (1926), the City of Danville held a special election in 1924 to seek voter approval to issue bonds for public improvements. After the vote was approved, several voters sued, alleging that the vote had been conducted illegally. *Id.* at 429-30. In 1925, Danville held a new vote concerning the bonds. *Id.* at 431. The Supreme Court held that the 1925 election rendered moot the procedural challenges to the 1924 election. *Id.* at 433. These cases are inapposite, as neither alleged an ongoing issue unattached from the specific challenged elections, such as the improper and continual manipulation of the voter rolls.[11] Because there is a live dispute regarding alleged ongoing member disenfranchisement, the circuit court erred by finding the entire case was mooted by the 2022 election.

MBC bore the burden of establishing mootness. *Massenberg*, 298 Va. at 216. Here, the evidence supports the conclusion that appellants' desired relief of a "reenactment" of the 2021

---

[11] Nor is this case similar to *Miller v. Int'l Union of United Brewery, Flour, Cereal, and Soft Drink Workers of Am.*, 187 Va. 889, 896-97 (1948), which was mooted by the expiration of the parties' contract. MBC argues that "[s]imilarly here, the July 2021 election has expired . . . and so have the appellants' rights under it." The question, however, is not whether appellants retain any rights under the 2021 election but whether they allege any ongoing violation of rights due them under the MBC constitution.

election is moot. However, the evidence simply does not support the conclusion that challenges to other alleged ongoing practices are moot.[12]

## CONCLUSION

For the foregoing reasons, we affirm the circuit court's ruling that appellants' request that the court award a reconstituted 2021 election is not available relief—and that the issue is moot. We reverse the circuit court's ruling that the entire case is moot. MBC bore the burden of establishing that appellants' claims were moot. On this record, MBC's evidence was insufficient to establish that the alleged "ongoing" violations of MBC's constitution failed to present a justiciable controversy. We remand the case to permit the circuit court to address ongoing claims relating to disenfranchisement of members, transparency and notice, and the secret ballot dispute.

*Affirmed in part, reversed in part, and remanded.*

---

[12] Appellants assert that even if these ongoing violations appear to be moot, they satisfy the "capable of repetition, yet evading review" criteria approved under Virginia precedent. "[T]he mootness doctrine may be inapplicable when a proceeding is short-lived by nature" and "'[i]f the underlying dispute is capable of repetition, yet evading review.'" *Daily Press, Inc.*, 285 Va. at 452 (quoting *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 563 (1980)); *see Va. Dep't of State Police v. Elliott*, 48 Va. App. 551, 554 (2006). For example, appellants contend that if MBC can disenfranchise voters who might vote "the wrong way," but then can wipe clean the violations when the elders elected in 2021 step down, there is nothing to stop MBC from doing the same thing *after* the 2021 election; in fact, appellants claim this is precisely what happened and that the initial violations have already been repeated. However, because our finding with respect to the ongoing violations is based on the lack of evidence supporting mootness, we need not address appellants' argument that their claims are "capable of repetition, yet evading review." The doctrine of judicial restraint requires that we decide cases on the best and narrowest grounds available. *McGhee v. Commonwealth*, 280 Va. 620, 626 n.4 (2010).