## Richmond

## CHARLES B. HARPER, JR., ET AL.

### V.

## CITY COUNCIL OF THE CITY OF RICHMOND, ET AL.

January 11, 1980.

Record No. 790763.

Present: Carrico, Harrison, Cochran, Harman, Poff and Compton, J.J.

*Richard J. Knapp, II* (*David M. Shapiro; Caudle and Shapiro*, on brief), for appellants.

*C. Tabor Cronk, Assistant City Attorney* (*Conard B. Mattox, Jr., City Attorney; Albert J. FitzPatrick, Assistant City Attorney*, on brief), for appellees.

*Amicus Curiae: Downtown Development Unlimited* (*A. J. Brent; Lee F. Davis, Jr.; Christian, Barton, Epps, Brent & Chappell*, on brief), for appellees.

COMPTON, J., delivered the opinion of the Court.

■ Under the Public Finance Act, Code §§ 15.1-170 to -227, provisions are made for judicial determination of the legality of all proceedings taken by the governing body of a political subdivision in connection with the authorization or issuance of bonds. *See* §§ 15.1-213 to -221. In this appeal, we review the trial court's ruling that a municipality's procedure for the issuance of general obligation bonds was valid.

In the fall of 1977, appellee City Council of the City of Richmond decided to include a new category, Downtown Redevelopment Program, in its program of proposed capital improvement projects. At that time, the City Council decided to add a new project called Downtown

Development-Project One. The estimated City cost of Project One was $29 million. $16.8 million of the project was to be financed from the City's reserve fund for public improvements and the balance of $12.2 million was to be financed from the proceeds of the sale of general obligation bonds.

The objective of Project One is to redevelop the portion of downtown Richmond bounded by Broad, Fourth, Clay and Seventh Streets. Land is to be provided for public and private development in an effort to support and strengthen the downtown area of the City. It is intended that the development will broaden the City's potential for attracting conventions and will strengthen the tax base. Proposed components of the project include a convention and exhibition center, upgraded parking facilities, an atrium plaza, and street and sidewalk improvements.

On November 28, 1977, the City Council adopted a series of five bond ordinances to finance the cost of certain capital improvements totalling $32.2 million of which $12.2 million was for Project One. Only three of those ordinances, numbers 77-238-216, 77-239-217, and 77-240-218, are in issue here; for clarity these will be hereinafter referred to as Ordinances 1, 2 and 3 respectively. The three ordinances authorized the issuance of so-called "serial public improvement bonds" and included the sums of $8.835 million, $2.646 million and $719,000 for Project One. The ordinances provided that the bonds for Project One funds be dated January 15, 1978 to be payable serially in annual installments on January 15 of each year from 1979 to 1998. The ordinances further specified that the bonds would bear interest from their date, such interest to be payable semi-annually on January 15 and July 15. Also on November 28, the City Council adopted resolutions providing for the sale, character and form of the bonds.

The sale of the bonds scheduled for January 11, 1978 was not held because of litigation which developed challenging City Council's action on November 28. A group of taxpayers sought to have a referendum held on the question whether the bonds should be issued and sold. In January of 1978, the trial court and this court both decided that no referendum was required. Thereafter, certain taxpayers filed a suit in the United States District Court for the Eastern District of Virginia challenging the validity of the provisions of the Richmond City Charter dealing with the referendum. Following an April 1978 District Court decision favorable to the City, the taxpayers appealed to the United States Court of Appeals for the Fourth Circuit which affirmed the District Court in a judgment that became final in November of 1978.

On December 18, 1978, the City Council adopted new resolutions fixing a January 3, 1979 sale date for the Project One bonds. On the day before the sale was to occur, a city taxpayer filed suit in the court below asking that the December 1978 resolutions be declared null and void and seeking to enjoin the issuance of the Project One bonds.

Subsequently, on March 12, 1979, the City Council adopted a series of resolutions relating to the issuance, sale, character and form of the capital improvement bonds. Two of those resolutions, numbers 79-R36-48 and 79-R37-49, deal with Project One and are in issue here; for convenience they will be hereinafter referred to as A and B respectively.

Resolution B scheduled the sale of Project One bonds for October 17, 1979. Resolution A made "further provision" for the bond issue to finance $11,590,000 of the $12,200,000 authorized by Ordinances 1, 2 and 3. That resolution noted that $610,000 of the $12,200,000 in bonds to be dated January 15, 1978 would have matured on January 15, 1979, prior to the new date of sale. The resolution thus provided that the bonds should be dated January 15, 1978, and "payable in annual installments on January 15 of each year as follows: $610,000 in each of the years 1980 to 1998, inclusive." The resolution further provided that the bonds should bear interest from date to be payable semiannually on January 15 and July 15. To be noted is the fact that as a result of the postponement of the originally scheduled January 11, 1978 sale date, three interest payments due in accordance with Ordinances 1, 2 and 3 had become due and payable before the new sale date of October 17, 1979. Accordingly, Resolution B specified that "[c]oupons for interest with respect to periods which expire prior to the closing for the bonds will be detached before delivery to the successful bidder."

On March 13, 1979, the day following adoption of the resolutions, the City Council filed the instant proceeding by motion for judgment under Code § 15.1-214[1] seeking validation of the proceedings which

---

[1] § **15.1-214. Proceeding by political subdivision to establish validity; procedure; parties defendant.**—The governing body of any political subdivision proposing to issue bonds may bring at any time a proceeding in any court of the county or city having general jurisdiction and in which such political subdivision is located to establish the validity of such bonds, the legality of all proceedings theretofore taken in connection with the authorization or issuance of such bonds and the validity of the tax or other means provided for the payment of such bonds, and the validity of all pledges of revenues and of all covenants and provisions which constitute a part of the contract between such political subdivisions and the holders of such bonds. Such proceeding shall be brought by filing a motion for judgment describing such bonds

had transpired in connection with the bonds. Appellants Charles B. Harper, Jr. and Albert L. Shear filed responsive pleadings as parties defendant asserting that Ordinances 1, 2 and 3, the December 1978 resolutions, and resolutions A and B were null and void and without effect. There was no controversy as to the facts of the case and the issues were submitted to the trial court on defendants' motions for summary judgment. The court below, in an April 1979 written opinion, decided that all proceedings taken with relation to the authorization and issuance of the bonds were legal and valid. Subsequently, we awarded defendants an appeal from the trial court's May 1979 final decree, and placed the case on the privileged docket as required by Code § 15.1-219.

■ Defendants first contend the City Council failed to comply with Section 7.09 of the Richmond City Charter which sets forth in mandatory language certain requisites of an ordinance authorizing the issuance of bonds. That section provides:

### Sec. 7.09. Contents of bond ordinance.

An ordinance authorizing the issuance of bonds shall include a statement of the purpose or purposes of the issue and if the purpose is to finance one or more capital improvement projects it shall describe each of them sufficiently for purposes of identification, and shall estimate the cost of the project or projects and the portion thereof to be defrayed from sources, specifying them, other than the proposed bond issue. The bond ordinance shall also include the amount of the proposed issue, a statement showing the proposed issue to be within the limitation of indebtedness as provided in section 7.03, the probable life of the [project] or the average probable life of the [projects] to be financed as determined by the council, the date of issue, the dates of the first and last serial maturities, the dates on which interest shall be paid, a declaration that principal of and interest on the proposed issue are to be paid from ad valorem taxes on real estate and tangible personal property and that the full faith and credit of the city are pledged to such payment, and the procedure for the sale of the proposed issue. All other matters relating to the authorization, issuance or sale of the bonds or notes may be provided by resolution.

and the proceedings had relative to the issuance thereof and alleging that such bonds when issued will be valid and legal obligations of the issuing political subdivision. In such motion for judgment the taxpayers, property owners and citizens of the issuing political subdivisions, including nonresidents owning property or subject to taxation therein, and all other persons interested in or affected in any way by the issuance of such bonds shall be made parties defendant.

Defendants note that where, as here, the purpose of the issue is to finance one or more capital improvement projects, the ordinance shall estimate the cost of the projects and the portion of the cost to be defrayed from sources, specifying them, other than the proposed bond issue. Defendants also note that Ordinances 1, 2 and 3 set forth the amount of funds from the issue to be contributed to Project One. But, they say, nowhere on the face of the enactments is either the balance of the costs to be defrayed from non-bond proceeds specified or an estimate of the cost of Project One set forth. Consequently, defendants urge, the ordinances are void.

The City Council responds to this argument by pointing to various portions of the bond ordinances and stating "that the twelve essential ingredients of [a] bond ordinance as set forth in Section 7.09 were complied with." We reject that contention.

We will not encumber this opinion by reciting the several detailed portions of the bond ordinances upon which the City Council relies to sustain its position.[2] It is sufficient to say, as the defendants point out, that the bond ordinances do not contain a statement of either the estimated total cost of Project One or the portion of the cost to be financed from a specified source other than the bond proceeds. Accordingly, there has been a failure to include in the ordinances material information required by the City charter, and if this were the only issue in the case, the enactments in question would be declared null and void.

The City Council argues, however, that in "view of the provisions of Section 7.10 of the Charter of the City it was really unnecessary for the trial judge to find compliance with the provisions of Section 7.09 of the Charter."

Section 7. 10 specifies:

### Sec. 7.10. Short period of limitation.

When thirty days shall have elapsed from the date of publication of a bond ordinance or, in the case of a bond ordinance subjected to referendum, from approval of same by the voters as provided in this chapter, (a) any recitals or statements of fact contained in such bond ordinance or in the preambles or recitals thereof shall be deemed to be true for the purpose of determining

---

[2] We note that in the trial court the City Council took an alternative position in an attempt to remedy the alleged deficiencies in the ordinances. It relied on language contained, not in the bond ordinances, but in another ordinance, also enacted on November 28, 1977, which amended the 1977-78 Capital Budget Ordinance. The City Council did not advance that argument in this court.

the validity of the bonds thereby authorized and the city and all other parties interested shall forever thereafter be estopped from denying the same, (b) such bond ordinance shall be conclusively presumed to have been duly and regularly passed by the city and to comply with the provisions of this Charter and all laws, and (c) the validity of such bond ordinance shall not thereafter be questioned by either a party plaintiff or a party defendant except in a suit, action or proceeding commenced prior to the expiration of such thirty days.

Council argues that Section 7.10 creates a right which must be exercised within 30 days. It contends that because the right and the time for its exercise are combined in the same provision, a condition precedent to mounting an attack on the validity of Richmond bond ordinances has been established by the General Assembly through the charter provisions. Council notes that the applicable 30-day period expired in 1977 and says that it was too late for defendants to contest the ordinances in this 1979 validation proceeding.

Defendants make two arguments in answer to this contention. First, they note that State Code § 15.1-213, one of the statutes dealing with judicial validation of bonds and found in Article 6 of the Public Finance Act, specifies:

The provisions of this article shall apply to all suits, actions and proceedings of whatever nature involving the validity of bonds of any political subdivision, whether the bonds are to be issued following an election on the question of their issuance or without necessity of such election. They shall supersede all other acts and statutes on the subject and be controlling in all such cases, notwithstanding the provisions of any other law or charter to the contrary.

They then note that another Article 6 statute, Code § 15.1-214, *supra* note 1, permits a municipality to bring "at any time" a validation proceeding. Next, they point to Code § 15.1-216, yet another Article 6 statute, which provides in part:

Any person . . . desiring to contest the issuance of any such bonds shall proceed by motion for judgment brought in the court having jurisdiction *as provided in § 15.1-214*. [Emphasis added.]

Defendants argue that §§ 214 and 216, when read together, allow them to file a contesting suit beyond the 30-day limitation of Charter Section 7.10. Pointing to the language of § 216 emphasized above, defendants argue that they, like Council, may challenge the bonds "at any time." This is so, they say, because § 216 incorporates the "at any time" language of § 214 by virtue of the phrase "as provided in § 15.1-214." Thus, under § 15.1-213, defendants conclude, the state code is controlling when there is a "conflict between the Code and any City Charter."

Second, defendants say that Code § 8.01-235 also precludes application of Charter Section 7.10. That state statute provides:

> **§ 8.01-235. Bar of expiration of limitation period raised only as affirmative defense in responsive pleading.**—The objection that an action is not commenced within the limitation period prescribed by law can only be raised as an affirmative defense specifically set forth in a responsive pleading. No statutory limitation period shall have jurisdictional effects and the defense that the statutory limitation period has expired cannot be set up by demurrer. This section shall apply to all limitation periods, without regard to whether or not the statute prescribing such limitation period shall create a new right.

Contending that Charter Section 7.10 is not a condition precedent but a statute of limitations, defendants argue that "the bar of the statute of limitation may only be raised as an affirmative defense in a responsive pleading" pursuant to § 8.01-235. Defendants correctly point out that the City Council failed to rely on Section 7.10 in its pre-decision trial court pleadings and argue that Council thus waived that "defense" even though the trial judge in his written opinion took notice of Section 7.10 *sua sponte*.

Defendants alternatively argue that if Section 7.10 is a condition precedent, then it is jurisdictional. And, they say, Code § 8.01-235 prohibits application of such a jurisdictional "defense." Defendants contend § 8.01-235 abolished the prior distinction recognized in Virginia case law between a condition precedent and a statute of limitations in situations when the condition precedent is part of the right as well as the remedy. Consequently, defendants argue, the state statute overrides the conflicting jurisdictional charter provision according to the provisions of Code § 15.1-213.

We do not agree with the defendants' contentions. We think that City Charter Section 7.10 is applicable and that the defendants waited

too long to attack the validity of the bond ordinances.

■ To determine whether the general law, which is set forth in the Public Finance Act (Chapter 5 of Title 15.1 of the Code of Virginia), or the City charter provision governs here, we examine the provisions of the Act. Pursuant to the Act, the City has the authority to issue its bonds under its charter provisions and is not required to issue the bonds under the general law. Code § 15.1-171 provides in part:

> Nothing in this chapter shall repeal, amend, impair or in anywise affect any of the provisions of any charter or special or local act authorizing or regulating the issuance of bonds by a municipality, and bonds may be issued pursuant to and in accordance with provisions of such charter or special or local act and without regard to the requirements, restrictions or other provisions of this chapter.

Consequently, because the City in this case has proceeded under its charter, we must look to the provisions of the charter governing bond validity to decide whether the attack on the ordinance may be sustained. *See Falls Church Taxpayers League* v. *City of Falls Church,* 203 Va. 604, 610, 125 S.E.2d 817, 821 (1962).

■ But § 15.1-171 does not furnish a complete answer to the position taken by the defendants in view of the provisions of Code §§ 15.1-213 and 8.01-235. As we have already said, § 15.1-213 is a part of Article 6 of the Act and deals specifically with judicial validation proceedings. That statute, as we have seen, specifies that Article 6 controls such proceedings "notwithstanding the provisions of any other law or charter to the contrary." The question thus becomes whether the 30-day time limitation in the City charter is still viable in the face of Code § 15.1-216, *supra,* permitting any person desiring to contest the issuance of municipal bonds to proceed "by motion for judgment brought in the court having jurisdiction as provided in § 15.1-214." It will be remembered that defendants urge that a reference back to § 15.1-214, which allows the governing body to proceed "at any time" to establish bond validity, demonstrates that contestants are permitted to proceed "at any time" without regard to a 30-day charter limitation.

The resolution of this question actually depends upon an interpretation of Code § 15.1-216. If that statute permits dissidents to contest a bond issue *at any time,* the City charter provision establishing a time limitation may not be enforced.

We do not think the provisions of § 15.1-216 prevent application of Charter Section 7.10 in this case. Section 15.1-214 establishes the procedure to be used by proponents of a bond issue. It permits an action *at any time*. Section 15.1-216 sets the procedure to be followed by the opponents of a bond issue who wish to initiate a contest. No time limit is specified in that statute. Because the statute is silent as to time, the time limitation in the City charter remains viable and governs, even if we assume the contest may be mounted, as here, in responsive pleadings and not by a motion for judgment as specified in § 15.1-216. And, the clause in § 15.1-216 allowing the contestants to "proceed. . .in the court having jurisdiction as provided in § 15.1-214" does not change the foregoing result. The phrase "as provided in § 15.1-214" refers only to the venue provisions of that statute and not to the time when the proceeding may be initiated.

█ The overall statutory scheme, which includes the charter provisions, evinces a sound legislative purpose to provide for quick validation of bond issues. While the governing body may proceed at any time to obtain validation, dissenters must act with dispatch. Otherwise, if contestants could proceed at any time, uncertainty would always overhang a bond issue. Investor reluctance to purchase under such circumstances would discourage municipal authorities from attempting to sell the bonds. *See Ficklen* v. *City of Danville*, 146 Va. 426, 430-31, 131 S.E. 689, 690 (1926).

This legislative purpose is also demonstrated in the general law governing bonds issued under the Public Finance Act. Code § 15.1-212 establishes a 30-day limitation on the right to contest the validity of such bonds.[3]

█ We now consider the question whether Code § 8.01-235, *supra* at 735, precludes the application of Charter Section 7.10. We think it does not. Contrary to defendants' argument, § 8.01-235 is merely a procedural statute governing the manner of pleading statutes of limitation. This is demonstrated by the full text of the Revisers' Note preliminary to the revision of Title 8 of the Code, as follows:[4]

Proposed § 8.01-235 changes present Virginia case law on pleading statutes of limitation. The common law rule adopted by the Supreme Court distinguishes between 'pure' statutes of limitations which theoretically affect only the availability of a

---

[3] In an enactment not affecting this proceeding, the 1979 General Assembly amended Code § 15.1-216 to include a 45-day time limitation for bond issue contests. Acts 1979, ch. 184.

[4] The Revisers' Note appearing in the present Code is in abbreviated form.

remedy (and not the underlying right) and 'special' limitations prescribed by a statute creating a new right not available at common law (e.g., the wrongful death statute); Virginia courts have held that 'special' limitations prescribed by statutes creating a new right must appear on the face of the complaint or be subject to demurrer while a 'pure' statute of limitation must be specifically pleaded as an affirmative defense by the party claiming its benefit and cannot be taken advantage of by demurrer. Burks Pleading and Practice, § 236 (4th Ed., 1952); *Branch* v. *Branch,* 172 Va. 413, 2 S.E.2d 327 (1939). Such a distinction in pleading has been premised on the theory that special statutes of limitations contained in statutes creating a new right not available at common law are jurisdictional in effect. *Branch* v. *Branch,* supra, at 417-418.

The proposed section would overrule *Branch* v. *Branch,* supra. Although the result would be the abrogation of a present rule of Virginia pleading, the uniformity and simplicity in pleading achieved thereby outweigh the needless complexity and confusion engendered by the old distinction between 'pure' and 'special' limitations. Moreover, the proposal has the additional advantage of removing jurisdictional considerations from the application of statutes of limitations. Finally, although defendants will be required by the proposal to plead all statutory limitations specifically as affirmative defenses in responsive pleadings and can no longer set up 'special' limitations by demurrer, the additional burden placed on defendants is slight compared with the appropriateness and certainty in pleading thus achieved.

Report of The Virginia Code Commission To The Governor and The General Assembly of Virginia, House Doc. No. 14, 149-50 (1977).

According to its plain terms, § 8.01-235 deals with the manner in which reliance on limitation periods must be asserted in responsive pleadings. It does not abolish the substantive distinction heretofore recognized between a "pure" and "special" statute of limitation. *See Barksdale* v. *H. O. Engen, Inc.,* 218 Va. 496, 498, 237 S.E.2d 794, 796 (1977). As the revisers note, prior Virginia law has been changed only to the extent that a distinction in *pleading* had been premised on the theory that "special" statutes of limitation were jurisdictional in effect. In the procedural posture of the present case, the City Council was not required to include in a "responsive pleading" its intention to

rely on Charter Section 7.10, be it deemed a "pure" or "special" limitation, in order to assert that section's substantive provisions to bar an untimely attack on this bond issue.

The effect of the foregoing conclusion is to render wholly valid the contents of the ordinances in question against any charge, *inter alia,* that they fail to comply with the provisions of the Richmond City Charter and all laws. This would end our review of the decision below but for defendants' second major contention.

■ Defendants argue that the City Council improperly enacted changes in bond ordinances by subsequent resolutions. Citing general principles of law expressing the difference between an ordinance and a resolution, defendants say that Resolutions A and B purported to effect changes in matters which were required to be enacted by ordinance. For example, defendants point to City Charter Section 7.05 dealing with the form and contents of bonds. That section requires that the first annual installment for repayment of the bonds "shall be payable not more than one year from the date of issue of such bonds." Defendants argue that under "the subject resolutions the first issue of bonds will mature in 1980, which is more than one year from the date of issue of the bonds of January 15, 1978." Thus, they say, "by resolution City Council has altered the initial bond ordinance such that the first issue of maturity will take place. . .*two* years after the date of issue, which is clearly in contravention of Section 7.05."

Defendants also point to another part of Section 7.05 which provides that "[i]nterest coupons transferable by delivery shall be attached to the bonds. . . ." They argue that the resolutions authorizing detachment before delivery of all expired interest coupons are invalid because they conflict with the mandatory language of Section 7.05. In addition, defendants refer to Charter Section 7.09, *supra* at 732, which requires the bond ordinance to state the amount of the proposed issue, the dates of the first and last serial maturities, the dates on which interest shall be paid and the procedure for the sale of the proposed issue. Defendants note that Ordinances 1, 2 and 3 made provision for each of the foregoing matters. They then argue that amendment of those requisites can only be accomplished by "reordination" and not, as here, by subsequent resolution. We do not agree with defendants.

We return again to the Public Finance Act provisions for judicial validation proceedings. Code § 15.1-221 provides:

No court in which a proceeding to invalidate or sustain bonds is brought shall invalidate the bonds unless it finds substantial

defects, material errors and omissions in the incidents of such bond issue. Matters of form shall be disregarded.

In addition, Charter Section 7.09 providing for the contents of a bond ordinance concludes:

All other matters relating to the authorization, issuance or sale of the bonds or notes may be provided by resolution.

Code § 15.1-221 is a codification of the general principle that the validity of a bond issue will be sustained by the courts, if possible. *See* 15 *McQuillin, Municipal Corporations* § 43.14 (3d ed. 1970 rev. vol.). Against that background, we look to the changes made by Resolutions A and B to determine whether they relate merely to "other" matters concerning authorization, issuance or sale of the bonds so as to permit the changes to be effected by resolution, as sanctioned by the City charter.

The nature of the changes were as follows. Because of the protracted litigation which developed after Ordinances 1, 2 and 3 were enacted in November of 1977, the sale date was postponed from January 11, 1978 to October 17, 1979. Consequently, the principal installment due on January.15, 1979 in accordance with the ordinances would have become due and payable before the postponed sale date. Also, the interest payments due on July 15, 1978, January 15, 1979 and July 15, 1979 under the ordinances would likewise have become due and payable before October 17, 1979. Resolutions A and B reflected that passage of time by specifying (1) that the interest coupons payable on the three dates be detached from the bonds before delivery thereof and (2) that $610,000, representing the amount of serial maturity which would have been due on January 15, 1979, be deleted from the total amount of the bond issue. Thus, under Resolutions A and B every payment required by the ordinances to be made after the new sale date will be made precisely as required by Ordinances 1, 2 and 3.

As the brief of amicus curiae notes, the City should not be required to engage in the absurd exercise of collecting from bond purchasers an amount which the City would simultaneously be required to remit to them. Nor should any purchaser be obligated to pay large sums of money at the closing only to have the money instantly returned.

The ordinances provide for payment of the bonds serially in annual installments on January 15, 1979 through January 15, 1998.

On January 15, 1979, one-twentieth of the $12.2 million in authorized bonds, or $610,000, became "due" even though the City had not yet sold the bonds. The contested resolutions merely treat that annual installment as if it had become due and been paid, all in compliance with the ordinances. Furthermore, the resolutions treat the interest payments as if they had become due and been paid, again in strict compliance with the ordinances. Also, the interest coupons will be attached to the bonds in compliance with Charter Section 7.05 and the resolutions merely authorize detachment of the coupons prior to delivery of the bonds, violating "neither the spirit nor the letter of the Charter," as amicus contends.

As we have demonstrated, the adjustments made by the resolutions did not materially change any of the provisions of the ordinances; to the contrary, the resolutions merely supplemented the requirements of the ordinances to accommodate the passage of time resulting from the prior litigation. Thus, we believe the changes involved "other" matters relating to the authorization, issuance or sale of the bonds and were properly handled by resolution.

For these reasons, the decree appealed from will be affirmed. Our mandate will provide, in accordance with Code § 15.1-220, that our decision is forever binding and conclusive as to the validity of all the bonds tested in the trial court in this proceeding, the validity of the tax or other means provided for the payment of such bonds and the validity of all pledges of revenues and of all covenants and provisions contained in the ordinances and resolutions authorizing or providing for the issuance of such bonds, and as to all matters adjudicated and as to all objections presented or which might have been presented in such proceeding, and shall constitute a permanent injunction against the institution by any person of any action or proceeding contesting the validity of the bonds or any other matter adjudicated or which might have been called in question in such proceedings.

*Affirmed.*