PRESENT:  All the Justices

WILLIAM P. JENKINS, SR., ET AL.

v.  Record No. 021993  OPINION BY JUSTICE BARBARA MILANO KEENAN
                                        June 6, 2003
BAY HOUSE ASSOCIATES, L.P.

FROM THE CIRCUIT COURT OF NORTHUMBERLAND COUNTY
Harry T. Taliaferro, III, Judge


This appeal involves a challenge to a decree in which the chancellor held that a plaintiff, who owns property lying beneath a pond opening to the Chesapeake Bay, also owns the waters of the pond.  The chancellor enjoined certain owners of land abutting the pond from trespassing on the pond's waters and from placing piers or other structures reaching into the water.  The dispositive issue before us is whether this holding and the award of injunctive relief were permitted under the allegations and prayers for relief in the plaintiff's pleadings.

We state the evidence in the light most favorable to the plaintiff, Bay House Associates, L.P. (Bay House), the prevailing party in the trial court.  City of Richmond v. Holt, 264 Va. 101, 103, 563 S.E.2d 690, 691 (2002); Tashman v. Gibbs, 263 Va. 65, 68, 556 S.E.2d 772, 774 (2002).  In April 1998, Bay House acquired by deed a 78.5-acre tract of land submerged beneath the waters of Gaskins Pond, a naturally occurring "salt pond" in Northumberland County.

Bay House's predecessors in title acquired the submerged land by deed from Claude A. Swanson, in his capacity as Governor of the Commonwealth of Virginia, in February 1909. At that time, the pond was completely separated from the waters of the Chesapeake Bay by a small strip of land, or isthmus, on the pond's eastern border. However, in recent years, a narrow "opening" in the isthmus has created an "outlet" connecting the waters of the pond to the waters of the Chesapeake Bay.

Since this opening was created, several owners of land adjoining the pond have constructed piers extending from their property into the pond that are affixed to Bay House's underlying land. In August 1998, George B. Little, a partner of Bay House, sent a letter to one of these adjoining landowners, William P. Jenkins, Sr., alleging that Jenkins had trespassed on Bay House's property by erecting a pier that was secured to the pond bed. In the letter, Little requested that Jenkins "remove all but the floating portion of [his] pier immediately." Little informed Jenkins that if he did not comply with Little's request, Little would seek an injunction prohibiting him from trespassing "on any portion of the bottom of Gaskins Pond." Jenkins did not comply with Little's demand.

In December 1998, Bay House's counsel sent letters to four other property owners whose land abuts the pond, advising them that Bay House owned "the land beneath Gaskins Pond" and that

2

Bay House had "not given permission to anyone to construct a dock on its property." Bay House informed the property owners that it would request injunctive relief if they did not remove their docks from Bay House's land by a certain date. None of these property owners complied with Bay House's request.

Bay House filed a bill of complaint in the circuit court against Jenkins and the four other property owners (collectively, the defendants). The bill of complaint alleged, among other things, that Bay House owned the "submerged land lying beneath the waters of Gaskins Pond" and that the defendants' failure to remove their docks from Bay House's "land" constituted acts of trespass. Bay House requested that the chancellor order the defendants to remove their docks and enjoin the defendants "from trespassing on the land of Bay House by constructing or causing to be constructed, or by placing or causing to be placed any thing on the land of Bay House." Bay House also asked that the chancellor grant "such other, further and general relief as the nature of the case may warrant or to equity shall seem meet."

At an ore tenus hearing, Bay House presented expert testimony from three witnesses who addressed various issues, including the question whether the pond had become a navigable body of water that could be traversed by boats entering and exiting the pond's opening to the Bay. The defendants did not

present any evidence to the chancellor. However, they argued, among other things, that they had riparian rights to use the waters and pond bed once the pond became open to the Bay.

The chancellor held that Bay House has "a fee simple ownership in the bed and waters of Gaskins Pond," and that the water opening between the pond and the Bay "did not in any way diminish" Bay House's ownership interest. Further holding that the defendants did not have any right to use the bed or waters of the pond, the chancellor enjoined the defendants from "trespasses upon the bed and waters of Gaskins Pond" and directed them to disassemble and remove their piers from the pond.

In their appeal, the defendants do not challenge the portion of the chancellor's decree holding that Bay House owns the land beneath the pond and is entitled to an injunction prohibiting the defendants from trespassing on Bay House's land. Instead, the defendants argue that the chancellor erred in awarding Bay House relief not requested in its pleadings by holding that Bay House owns the pond's waters and by enjoining the defendants from constructing or retaining any piers in those waters. The defendants observe that Bay House's bill of complaint, including its prayer for specific relief, asserted only an exclusive right to use the land beneath the pond, not the pond's waters. Thus, the defendants contend that Bay

4

House's bill of complaint did not provide them notice that they needed to defend their claimed right to use those waters, and that the disputed portion of the chancellor's decree was rendered without any allegations in the pleadings supporting such relief.

In response, Bay House argues that the portion of the chancellor's decree enjoining the defendants from use of the pond's waters was proper because this relief was "not inconsistent" with the specific relief Bay House requested concerning the defendants' trespass on Bay House's land. Bay House asserts that, therefore, its prayer for general relief permitted the chancellor to award the additional unrequested relief regarding use of the pond's waters. We disagree with Bay House's arguments.

A litigant's pleadings are as essential as his proof, and a court may not award particular relief unless it is substantially in accord with the case asserted in those pleadings. Brooks v. Bankson, 248 Va. 197, 206, 445 S.E.2d 473, 478 (1994); Gwinn v. Collier, 247 Va. 479, 484, 443 S.E.2d 161, 164 (1994); Ted Lansing Supply Co. v. Royal Aluminum & Constr. Corp., 221 Va. 1139, 1141, 277 S.E.2d 228, 229 (1981). Thus, a court is not permitted to enter a decree or judgment order based on facts not alleged or on a right not pleaded and claimed. Hensley v. Dreyer, 247 Va. 25, 30, 439 S.E.2d 372, 375 (1994); Harrell v.

5

Woodson, 233 Va. 117, 121, 353 S.E.2d 770, 773 (1987); Ted Lansing Supply Co., 221 Va. at 1141, 277 S.E.2d at 229; see Ainslie v. Inman, 265 Va. 347, 356, 577 S.E.2d 246, 251 (2003); Smith v. Sink, 247 Va. 423, 425, 442 S.E.2d 646, 647 (1994).

The rationale supporting this basic rule is plain. As we have stated, "[e]very litigant is entitled to be told by his adversary in plain and explicit language what is his ground of complaint or defense. . . . The issues in a case are made by the pleadings, and not by the testimony of witnesses or other evidence." Ted Lansing Supply Co., 221 Va. at 1141, 277 S.E.2d at 230 (quoting Potts v. Mathieson Alkali Works, 165 Va. 196, 207, 181 S.E. 521, 525 (1935)).

The pleadings in the present case did not contain any assertions that the defendants committed a trespass on waters owned by Bay House. Instead, Bay House's bill of complaint alleged only that Bay House owned the land beneath the pond, and that the defendants had committed acts of trespass by affixing their piers to Bay House's submerged land. In accordance with these facts alleged, Bay House requested that the defendants be enjoined from such trespasses on "the land of Bay House."

Based on these allegations, the case pleaded by Bay House was limited strictly to its ownership of the land and to the defendants' encroachment on that land. The total absence from these pleadings of any claim that Bay House owned the pond's

6

waters and that the defendants were committing a continuing trespass thereon precluded the chancellor from determining ownership of the waters and from imposing a remedy based on such facts not alleged. See Sink, 247 Va. at 425, 442 S.E.2d at 647; Hensley, 247 Va. at 30, 439 S.E.2d at 375; Harrell, 233 Va. at 121, 353 S.E.2d at 773.

The chancellor's contrary decision permitted Bay House to obtain relief without providing the defendants notice in the bill of complaint of any claim regarding their use of the pond's waters. This absence of notice in the pleadings was especially detrimental to the defendants because their right to use the pond's waters rested on the issue whether the waters were navigable, and the defendants bore the burden of proof on that issue. See Boerner v. McCallister, 197 Va. 169, 175, 89 S.E.2d 23, 27 (1955). Thus, the defendants were placed in the untenable position of bearing the burden of proof on an issue that Bay House did not identify in its pleadings.

We also find no merit in Bay House's assertion that its general prayer for relief permitted the chancellor to issue an injunction regarding the defendants' use of the pond's waters. When a party prays for both special and general relief and no relief may be granted under the special prayer, a court of equity may grant proper relief under the general prayer that is consistent with the case stated in the bill of complaint.

7

Johnson v. Buzzard Island Shooting Club, Inc., 232 Va. 32, 36, 348 S.E.2d 220, 222 (1986); Winston v. Winston, 144 Va. 848, 858-59, 130 S.E. 784, 787 (1925); see Sink, 247 Va. at 425, 442 S.E.2d at 648; Wright v. Castles, 232 Va. 218, 222, 349 S.E.2d 125, 128 (1986).  However, a general prayer will support relief only for those matters placed in controversy by the pleadings and, thus, any relief granted must be supported by allegations of material facts in the pleadings that will sustain such relief.  See Johnson, 232 Va. at 36, 348 S.E.2d at 222; Parks v. Wiltbank, 177 Va. 461, 465-66, 14 S.E.2d 281, 282 (1941); Dobie v. Sears, Roebuck & Co., 164 Va. 464, 475, 180 S.E. 289, 293 (1935).  This rule reflects the principle that although the power of an equity court is broad, that power does not permit a court to adjudicate claims that the parties have not asserted. See Sink, 247 Va. at 425, 442 S.E.2d at 647.

Here, the failure of Bay House's pleadings to put ownership of the pond's waters at issue, or to allege a trespass to those waters by the defendants, placed these issues beyond the reach of Bay House's general prayer for relief.  Therefore, the absence of such charges and facts from the bill of complaint excluded those issues from the scope of the relief that the chancellor was permitted to consider.  Accordingly, we hold that under the particular pleadings in this case, the chancellor

8

erred in awarding Bay House any relief regarding the pond's waters and the defendants' use of those waters.

For these reasons, we will affirm that portion of the chancellor's decree holding that Bay House owns the bed of Gaskins Pond and enjoining the defendants from trespassing on the pond bed.  We will reverse the portion of the decree 1) holding that Bay House owns the pond's waters; 2) enjoining the defendants from future construction of piers or other structures in those waters and from other further trespasses to the pond's waters; and 3) directing the removal of existing piers and structures that do not touch the pond bed.  We will enter final judgment in the case.

<u>Affirmed in part,</u>
<u>reversed in part,</u>
<u>and final judgment.</u>

9