# COURT OF APPEALS OF VIRGINIA

### Record No. 2041-24-1

PAUL A. GALIOTOS, INDIVIDUALLY, ET AL.
v.
STAVROS P. GALIOTOS, IN HIS CAPACITY
AS CO-TRUSTEE OF THE IRENE A. GALIOTOS
REVOCABLE TRUST, ET AL.

### Record No. 2063-24-1

STAVROS P. GALIOTOS, INDIVIDUALLY, ET AL.
v.
TASOS A. GALIOTOS, INDIVIDUALLY, ET AL.

Present: Judges Malveaux, Bernhard and Senior Judge Humphreys

Argued by videoconference

Opinion Issued April 7, 2026[*]

**FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH**
H. Vincent Conway, Jr., Judge Designate

Joseph M. Rainsbury (Richard H. Ottinger; Katherine Lennon Ellis; Woods Rogers Vandeventer Black PLC, on briefs), for appellant Paul A. Galiotos, Individually and as Co-Trustee of the Irene A. Galiotos Trust.

Roman Lifson (David B. Lacy; Grayson B. Cassada; Stavros P. Galiotos, *pro se*; Christian & Barton, L.L.P., on briefs), for appellant Stavros P. Galiotos, Individually and in his capacity as Co-Trustee of the Irene A. Galiotos Trust.

Gary A. Bryant (Bethany J. Fogerty; Willcox & Savage, P.C., on briefs), for appellees Tasos A. Galiotos, Individually and as Co-Trustee of the Irene A. Galiotos Trust, and Executive Cove, LLC.

Kyle McNew (Alison R. Zizzo; LeeAnne C. Schocklin; MichieHamlett PLLC; Midgett Preti Olansen PC, on brief), for appellee Stephanie C. Smith, Administrator of the Estate of Irene A. Galiotos, deceased.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

These two appeals arise from a dispute among three brothers—Stavros ("Steve"), Paul, and Tasos Galiotos—regarding the redemption of their deceased mother's interest in Executive Cove, LLC ("Executive Cove"). The circuit court entered a final order granting Tasos and Executive Cove's motions for summary judgment in a declaratory judgment/aid and direction action concerning the redemption. On appeal, we hold that the circuit court erred in finding that the redemption was permitted under the terms of Executive Cove's Operating Agreement, in dismissing Steve and Paul's cross-claims and third-party claims against Tasos and Executive Cove, and in including a finding in the final order regarding good faith. Accordingly, we reverse the circuit court's decision granting summary judgment and remand for further proceedings consistent with this opinion.

BACKGROUND

In 2016, Irene A. Galiotos, mother of the three brothers, died. Her will provided that her entire probate estate (the "Estate") was to be transferred to the Irene A. Galiotos Revocable Trust (the "Trust"), which benefited all three brothers. The Trust instrument provided that the three brothers would serve as co-trustees upon Irene's death. Irene's will appointed Tasos and Steve as co-executors of the Estate.

Executive Cove is a Virginia limited liability company ("LLC") formed in 1996. At the time of its formation, Executive Cove's Operating Agreement provided that Irene had a 35.8% interest in Executive Cove, with each brother holding a 21.4% interest. At the time of Irene's death, she held a 35.8% interest in Executive Cove with Tasos having the remaining 64.2% interest.

The current litigation concerns Tasos's redemption of the Estate's interest in Executive Cove. In 2018, two years after Irene's death, Tasos asserted in correspondence to Steve that

Article 10.4 of the Operating Agreement gave Executive Cove and the members of Executive Cove the opportunity to purchase Irene's interest in Executive Cove before it was transferred to the Trust. Steve rejected this interpretation, asserting that the right of first refusal provided by Article 10.4 was not applicable to Irene's interest.

On October 1, 2018, Executive Cove redeemed the Estate's interest in Executive Cove for a purchase price of $565,620.

Shortly before the redemption, in September 2018, Tasos filed an amended petition and complaint asking the circuit court to remove Steve as co-executor of the Estate (the "Executor litigation"). Steve then filed a counterclaim against Tasos, asking the circuit court to remove Tasos as co-executor of the Estate. Concerning Executive Cove, Steve also requested that the circuit court find that the redemption was void, or in the alternative, declare that the purchase price was below market value.

In the Executor litigation, the circuit court removed both Tasos and Steve as co-executors and appointed Stephanie Smith as the Estate's sole administrator.[1] In its ruling from the bench, the circuit court found that Tasos's actions concerning Executive Cove were not "prudent" and "in a way a breach of fiduciary duty," but denied Steve's motion to set aside the redemption. It also stated "that on Executive Cove, if [Smith] feels that it is necessary to bring that issue before the court, that she has that right to do so since she is now the administrator of the estate." The final order in the Executor litigation, entered in January 2020, further stated that "Smith is hereby authorized to bring the issue of the redemption by Executive Cove, LLC of the Estate's Interest in Executive Cove, LLC before the [c]ourt by means of the appropriate action, if she determines that it is necessary and prudent to do so."

---

[1] This decision was upheld on appeal to the Supreme Court of Virginia. *See Galiotos v. Galiotos*, 300 Va. 1, 11 (2021) ("*Galiotos I*").

- 3 -

Smith subsequently did so.  In August 2023, she filed an amended complaint for declaratory judgment, or in the alternative, petition for aid and direction, regarding the redemption.  Smith requested declaratory judgment or aid and direction on the issues of whether the redemption was "proper" and whether the redemption purchase price was "proper."  In addition, the complaint/petition asked where the ownership interest currently existed, where the funds for the redemption should be paid if the redemption had been improper, and how an increase or decrease in the purchase price would be effectuated if the purchase price had been improper.

In response to Smith's complaint/petition, Steve and Paul, in their capacities as co-trustees of the Trust, filed counterclaims against Smith, cross-claims against Tasos, individually and in his capacity as co-trustee of the Trust, and a third-party claim against Tasos, as former executor of the Estate.  Steve, acting as co-trustee of the Trust, also filed a cross-claim against Executive Cove.  Their pleadings challenged Tasos and Executive Cove's actions in redeeming the Estate's interest in the LLC.

Tasos and Executive Cove filed demurrers and pleas in bar to Steve and Paul's claims, arguing that Steve and Paul lacked standing to bring claims that belonged solely to the Estate.[2]  Following a hearing on these pleadings, the circuit court dismissed Steve and Paul's claims against Tasos on "the narrow issue of standing."

Tasos and Executive Cove then moved for summary judgment on Smith's complaint/petition.  After a hearing, the circuit court granted the summary judgment motions, finding that the redemption of the Estate's interest in Executive Cove and the purchase price were both proper.  The circuit court's order also included the finding that "[t]he [a]dministrator's

---

[2] Tasos also asserted that Steve and Paul's claims were barred by the doctrine of res judicata and the statute of limitations.

[c]omplaint was brought in good faith and was necessary to resolve issues for the administration of the Estate."[3]

Steve, Paul, Tasos, and Executive Cove moved for awards of attorney fees and costs. The circuit court granted in part and denied in part the parties' respective motions.

Steve and Paul now appeal.

ANALYSIS

I. Summary Judgment

Steve and Paul argue that the circuit court erred in granting Tasos and Executive Cove's motions for summary judgment.

"Summary judgment is appropriate in cases where no 'material fact is genuinely in dispute' and the moving party is entitled to judgment as a matter of law." *Ranger v. Hyundai Motor Am.*, 302 Va. 163, 169 (2023) (quoting Rule 3:20). "In an appeal from a circuit court's decision to grant or deny summary judgment, we review the application of the law to undisputed facts de novo." *Id.* And we likewise review "the circuit court's interpretation of an agreement de novo." *Va. Fuel Corp. v. Lambert Coal Co.*, 291 Va. 89, 97-98 (2016).

Steve and Paul challenge the circuit court's grant of summary judgment on several grounds. To resolve this dispute, however, we need only address one argument made by both on appeal: that the circuit court erred in concluding that Article 10.4 of the Operating Agreement applied to the redemption of the Estate's interest in Executive Cove.

"Construction of a controlling document may be an appropriate basis for summary judgment in Virginia, but only where it is shown that the moving party is entitled to judgment as a matter of law." *Leeman v. Troutman Builds, Inc.*, 260 Va. 202, 206 (2000) (citation omitted).

---

[3] Steve and Paul moved for reconsideration of the summary judgment order, which the circuit court denied.

We employ the same rules of interpretation applicable to contracts when interpreting an LLC's operating agreement. *See Flippo v. CSC Assocs. III*, 262 Va. 48, 64 (2001). "[T]he primary focus in considering disputed contractual language is for the court to determine the parties' intention, which should be ascertained, whenever possible, from the language the parties employed in the contract." *Va. Elec. & Power Co. v. Norfolk S. Ry. Co.*, 278 Va. 444, 458 (2009). We construe contracts "'as written' and do 'not add terms the parties themselves did not include.'" *PBM Nutritionals, LLC v. Lexington Ins. Co.*, 283 Va. 624, 636 (2012) (quoting *Landmark HHH, LLC v. Gi Hwa Park*, 277 Va. 50, 57 (2009)). "[W]hen the terms of a contract are clear and unambiguous, a court must give them their plain meaning." *Landmark HHH, LLC*, 277 Va. at 55 (quoting *Levisa Coal Co. v. Consolidation Coal Co.*, 276 Va. 44, 57 (2008)). Thus, "we must first determine if the relevant contract provision[] ha[s] a meaning discernible from the words alone, and if so, whether the trial court correctly interpreted" the provision. *Babcock & Wilcox Co. v. Areva NP, Inc.*, 292 Va. 165, 178 (2016).

At issue here, Article 10.4 of Executive Cove's Operating Agreement, titled "Right of First Refusal," states,

> A Member who wishes to Transfer his or her Company Interest, in whole or in part, to a person who is not already a Member, or who has reason to believe that an involuntary Transfer or a Transfer by operation of law is reasonably foreseeable (an "Offering Member"), shall first offer such Company Interest (the "Offered Interest") to the Company and the other Members on the terms set forth below.

Tasos interprets this provision as meaning that Executive Cove had a right of refusal to acquire any interest that was foreseeably subject to transfer to a non-member. This fulfills, he argues, the Operating Agreement's intention to prevent transfers to third parties. Under Tasos's reading of Article 10.4, he was "[a] member . . . who has reason to believe that an involuntary Transfer or a Transfer by operation of law [was] reasonably foreseeable," because a transfer by

operation of law was reasonably foreseeable upon Irene's death, when her interest would pass to the Estate.[4] Because this transfer of an interest to a non-member was reasonably foreseeable, he asserts that, as a member of Executive Cove, he had the obligation to "first offer such Company Interest . . . to the [LLC] and the other members."

We disagree with Tasos's interpretation because, at the time of her death, Irene's interest in Executive Cove was not a "Company Interest," and Article 10.4 plainly applies only to transfers of company interests. *See* Article 10.4 (providing that a member of the LLC who wants to transfer their interest or has reason to believe that a transfer is reasonably foreseeable "shall first offer *such Company Interest*" to Executive Cove and the other LLC members) (emphasis added). The plain language of the Operating Agreement defines a company interest in the LLC as "the relative interests of the individual Members in the Company," as indicated on a schedule attached to the agreement.

Prior to her death, Irene held a 35.8% company interest in the LLC, as shown on the schedule.[5] But at the time of her death, Irene's interest was only that of a membership interest with assignee rights rather than a company interest. Pursuant to the Virginia Limited Liability Company Act ("the LLC Act"), Irene was dissociated from Executive Cove upon her death. *See* Code § 13.1-1040.1(7)(a) (providing that "a member is dissociated from a limited liability

---

[4] Tasos also asserts that, after the transfer to the Estate, two further transfers of the interest became reasonably foreseeable—a transfer from the Estate to the Trust, and a transfer from the Trust to the trust beneficiaries. Tasos claims that "[a]ll of these 'transfers' cannot be valid until [the] Executive Cove Interest is first offered to Executive Cove and its only member, Tasos," because Article 10.1 of the Operating Agreement invalidates any transfer of a company interest that does not comply with the terms of Article 10.4. Because we conclude that Irene's interest at her death was not a company interest, we do not address Tasos's argument about three "reasonably foreseeable" transfers, although we do note that the transfer of Irene's interest to the Estate occurred instantly upon her death. It is thus difficult to conclude that this was a "reasonably foreseeable" transfer when it had already happened by the time of the redemption.

[5] Irene held this company interest jointly with rights of survivorship with her husband, Anthony Galiotos, who predeceased her.

company upon . . . [t]he member's death"). Further, under the LLC Act, "the dissociation of a member shall not affect the membership interest held by . . . the former member's successor in interest. The . . . successor in interest shall continue to hold a membership interest and shall have the same rights that an assignee of the membership interest would have under subsection A of [Code] § 13.1-1039." Code § 13.1-1040.2(A). In turn, subsection A of Code § 13.1-1039 provides limitations on the rights given to the holder of an assignment of an interest: an assignee is not entitled "to participate in the management and affairs of the limited liability company," but is entitled "to receive, to the extent assigned, . . . any share of profits and losses and distributions to which the assignor would be entitled."

Taken together, these statutes provide that the Estate obtained a membership interest in Executive Cove, as defined in Code § 13.1-1040.2, following Irene's death. But this interest was only one of an assignee with financial rights—a financial interest.[6] Our analysis, however, contains one important caveat. Under the LLC Act, a member is dissociated from an LLC upon the member's death "[e]xcept as otherwise provided in the articles of organization or an operating agreement." Code § 13.1-1040.1. Here, though, no provision in the Operating Agreement provides that a member is not dissociated upon death. And our Supreme Court has previously held that an operating agreement that "does not address statutory dissociation and does not state an intent to supersede Code § 13.1-1040.1(7)(a) . . . lacks specific language that would constitute an exception to the rule of dissociation set forth in" that code section. *Ott v. Monroe*, 282 Va. 403, 410 (2011), *superseded by statute on other grounds*, 2013 Va. Acts ch. 772. Accordingly, the Operating Agreement does not negate the effect of the LLC Act because it

---

[6] A financial interest is distinct from a control interest, which "encompasses [an LLC's] member's] entitlement to participate with the other [members] in the administration of the [LLC's] affairs." *Ott v. Monroe*, 282 Va. 403, 409 (2011), *superseded by statute on other grounds*, 2013 Va. Acts ch. 772.

contains no language providing that the death of a member would not cause the dissociation of that member.

Additionally, the LLC Act contains the same exception for Code § 13.1-1039(A), allowing for operating agreements to permit members to transfer membership interests that contain more than just a financial interest. *See* Code § 13.1-1039(A) (providing that an assignee is only entitled to receive the share of profits and losses and distributions to which the assignor would be entitled, "[u]nless otherwise provided in the articles of organization or an operating agreement").[7] But the Operating Agreement here does not provide for a deceased member's membership interest to be anything more than a financial interest. Article 11.3 of the agreement specifically provides that "[a] deceased Member's personal representative . . . shall have the same rights and be subject to the same limitations *as an assignee* of the Member that they represent." (Emphasis added). Thus, the Operating Agreement conforms with the default provisions of the LLC Act—upon a member's death, that member's membership interest becomes an interest that is entitled to the share of profits and losses and distributions to which Irene would have been entitled, but nothing more.[8]

---

[7] This language was added to the statute in 2013 in response to our Supreme Court's decision in *Ott*. In *Ott*, the Court also held that even if the agreement itself had not prevented statutory dissociation, "it is not possible for a member unilaterally to alienate his personal control interest in a limited liability company." 282 Va. at 410. In response, the General Assembly amended Code § 13.1-1039(A) to enable an LLC's operating agreement to allow for the assignee of a membership interest to participate in management. *See* 2013 Va. Acts ch. 772. We note that this amendment does not affect the portion of this opinion discussing what language is required to expressly exempt an LLC from the dissociation statute, which is the part of the *Ott* holding relevant to our analysis.

[8] Arguing that Article 10.4 does apply to the Executive Cove redemption, Tasos directs us to Article 18.16 of the Operating Agreement, which defines the term "transfer." It provides that "[a] 'Transfer' of a Company Interest includes any sale, pledging, encumbering, giving, bequeathing, or other transferring or disposing of, or permitting to be sold, encumbered, attached, or otherwise disposed of or have ownership changed in any manner, whether voluntarily, involuntarily, or by operation of law." He claims that the transfer of Irene's interest qualifies under this definition, as the transfer constituted a "bequeathing" or "giving" of the

Under the LLC Act and the Operating Agreement, Irene's company interest with control rights was extinguished upon her death, as her death dissociated her from the LLC. The Estate thus only obtained a financial interest, meaning a membership interest with assignee rights, upon her death. And because Article 10.4 only applies to transfers of company interests, this provision did not apply to the transfer of Irene's interest upon her death. Accordingly, we conclude that the circuit court erred in determining that the redemption of the Estate's interest in Executive Cove was proper, and in granting summary judgment on that basis.[9]

## II. Standing

Steve and Paul next argue that the circuit court erred in ruling that they lacked standing to assert their cross-claims and third-party claims in the declaratory judgment/aid and direction action.

Whether a litigant has standing presents "a 'question[] of law subject to *de novo* review on appeal.'" *Biddison v. Va. Marine Res. Comm'n*, 54 Va. App. 521, 527 (2009) (alteration in original) (quoting *Moreau v. Fuller*, 276 Va. 127, 133 (2008)). "Broadly speaking, standing can be established if a party alleges he or she has a 'legal interest' that has been harmed by another's actions." *Plofchan v. Plofchan*, 299 Va. 534, 548 (2021) (quoting *Howell v. McAuliffe*, 292 Va.

---

interest. This argument, however, ignores the fact that, upon her death, Irene was dissociated from the LLC. So the Estate only held a financial interest in the LLC unless the Operating Agreement provided otherwise, which it did not. The definition of "transfer" provided in the Operating Agreement therefore does not support Tasos's argument because that definition specifically discusses transfers of a "Company Interest," and upon Irene's death and dissociation, the Estate did not hold a company interest with control rights but instead only a financial interest.

[9] Steve and Paul also argue that the circuit court erred in granting summary judgment because: whether Tasos or Steve was the manager of Executive Cove was a disputed material fact; the valuation used for the redemption was a disputed material fact; the court erred in granting summary judgment prior to the end of discovery; and the circuit court erred in its consideration and reliance on extrinsic and inadmissible documents. Because we hold that the circuit court erred in granting summary judgment based on our conclusion that Article 10.4 did not apply to the redemption of the Estate's interest in Executive Cove, we need not address these arguments in order to resolve the assignments of error relating to the redemption.

320, 330 (2016)).  "The concept of standing concerns itself with the characteristics of the person or entity who files suit.  The point of standing is to ensure that the person who asserts a position has a substantial legal right to do so."  *Anders Larsen Tr. v. Bd. of Supervisors*, 301 Va. 116, 120 (2022) (quoting *Cupp v. Bd. of Supervisors*, 227 Va. 580, 589 (1984)).

In response to Smith's complaint/petition, Steve and Paul filed cross-claims against Tasos, in his individual capacity and as co-trustee of the Trust, and third-party claims against Tasos, as former executor of the Estate.  Their claims asserted breach of operating agreement, breach of trust, tortious interference with business expectancy, statutory conspiracy, attempted statutory conspiracy, common law conspiracy, fraud, and breach of fiduciary duties.  The basis for all of these claims was their contention that, following Irene's death, Tasos crafted a plan to unilaterally and improperly redeem the Estate's interest in Executive Cove for a lower than market-value purchase price that significantly undervalued the interest and improperly benefited him and Executive Cove.  They argued that Tasos's actions were both self-serving and in breach of his fiduciary duties as co-executor of the Estate and co-trustee of the Trust.

In reviewing whether Steve and Paul had standing to assert these claims, we look to whether the claims were brought on behalf of the Estate, or on behalf of the Trust.  It is well established in Virginia that "[t]he personal representative, not a beneficiary of the estate, is the proper party to litigate on behalf of the estate and that is true even when the personal representative is also a possible beneficiary of the estate."  *Platt v. Griffith*, 299 Va. 690, 692 (2021) (alteration in original) (quoting *Reineck v. Lemen*, 292 Va. 710, 722 (2016)).[10]  In *Kittrell*

_____

[10] Our Supreme Court has noted that there are exceptions to the general rule that the personal representative of an estate has exclusive standing to sue on behalf of an estate, including if the personal representative refuses to sue. *Phillips v. Rohrbaugh*, 300 Va. 289, 304 (2021). After the circuit court dismissed his claims for lack of standing, Steve filed a motion for leave to amend his pleading "to specifically allege that . . . Smith refused to sue, thereby definitively bringing this matter within the exception to the rule." The circuit court denied the motion. Steve assigns error to this denial on appeal.  Because we conclude that the circuit court erred in its

*v. Fowler*, 301 Va. 25 (2022), our Supreme Court applied this principle and found that the appellees, beneficiaries of a decedent's trust who were not personal representatives of the estate, lacked standing because the claims they asserted belonged to the decedent's estate, for two reasons. *Id.* at 26, 29-30. First, the disputed transaction—the sale of decedent's minority interest in an LLC to her son, the brother of the appellees—did not involve a trust asset. *Id.* at 25-26, 29. The appellees asserted that the decedent's trust would have received the decedent's interest in an LLC but for the allegedly improper sale, and that they, as remainder beneficiaries of the trust, would have received the interest upon the decedent's death. *Id.* But our Supreme Court noted that the allegedly improper transaction occurred a year prior to the creation of the decedent's trust; "[c]onsequently, [the decedent's] minority interest was never to be a trust asset." *Id.* at 29. Second, assuming that the appellees had a claim for rescission of the allegedly improper transaction, "the claim belongs to [the decedent's] estate as it would have belonged to [the decedent] during her lifetime." *Id.*

Here, in contrast, Steve and Paul's pleadings allege an injury to a Trust asset, and not a speculative one—they allege that but for Tasos's acts, the Trust would have received Irene's interest in Executive Cove. As opposed to the LLC interest at issue in *Kittrell*, it cannot be said that Irene's interest "was never to be a trust asset." *Id.* Irene's will specifically provided that upon her death, all of her assets, including her interest in Executive Cove, were to be transferred to her Trust for the benefit of the Trust beneficiaries. If Steve and Paul's claims are successful, the Trust itself would ultimately benefit as a result. *See Platt*, 299 Va. at 693 (holding that the appellants, who were not personal representatives of the estate, did not have standing for their claims because they "would only indirectly benefit from their claims as the potential

determination that Steve lacked standing to pursue his claims, we need not address his argument regarding the court's refusal to allow Steve leave to amend his pleading.

- 12 -

beneficiaries of [the decedent's] 2010 will," while the "estate would 'directly benefit' if the appellants prevailed on their claims" (quoting *Burns v. Equitable Assocs.*, 220 Va. 1020, 1028 (1980))). Moreover, the alleged wrongful acts by Tasos were committed after, not prior to, Irene's death; thus, it cannot be said that the claims involving those acts belonged to the Estate as they would have belonged to Irene during her lifetime.

Steve and Paul's claims, brought in their capacities as co-trustees of the Trust, were based on their overall allegation that Tasos's actions caused injury to the Trust. Code § 64.2-778(A)(25) specifically allows a trustee to "[p]rosecute or defend an action, claim, or judicial proceeding in any jurisdiction to protect trust property and the trustee in the performance of the trustee's duties." Accordingly, we hold that, as co-trustees, Steve and Paul had standing to assert claims against Tasos in his capacity as another co-trustee. *See* Restatement (Third) of Trusts § 94(1) (A.L.I. 2012) ("A suit against a trustee of a private trust to enjoin or redress a breach of trust or otherwise to enforce the trust may be maintained only by a beneficiary or by a co-trustee, successor trustee, or other person acting on behalf of one or more beneficiaries."). As co-trustees, they also had standing to assert their claims against third parties, namely Tasos in his individual capacity and in his capacity as a former co-executor of the Estate. *See* Restatement (Third) of Trusts, *supra*, § 107(1) ("A trustee may maintain a proceeding against a third party on behalf of the trust and its beneficiaries.").[11]

Therefore, to the extent that Steve and Paul's claims assert injuries to the Trust, they have standing to pursue these claims. While making no comment on the underlying merits of Steve

---

[11] For the same reason, Steve also had standing to assert the claims included in his pleading against Executive Cove, a third party.

and Paul's claims, we hold that the circuit court erred in ruling that they lacked standing to assert these claims as part of Smith's action for guidance from the circuit court.[12]

### III.  Finding of Good Faith

Steve and Paul also contend that the circuit court erred in its finding regarding Smith's actions in this litigation.  In its final order granting summary judgment, the circuit court found that "[t]he [a]dministrator's [c]omplaint was brought in good faith and was necessary to resolve issues for the administration of the Estate."  Steve and Paul argue that the circuit court erred in including this finding in the order because this issue was not raised in the pleadings before the court.

"Under well-settled Virginia law, '[a] litigant's pleadings are as essential as his proof, and a court may not award particular relief unless it is substantially in accord with the case

---

[12] Tasos asks this Court to affirm the circuit court's dismissal of Steve and Paul's claims on another basis he advanced below—that their claims are barred by the doctrine of res judicata. We decline this invitation.  A party whose claim "is decided on the merits by a final judgment, is forever barred from prosecuting any second or subsequent civil action against the same opposing party . . . on any claim or cause of action that arises from that same conduct . . . or occurrence." Rule 1:6(a).  In the Executor litigation, Steve argued that Tasos had breached his fiduciary duties by his conduct regarding the redemption of Executive Cove.  In the usual case, this would preclude Steve, or anyone with whom he is in privity, from litigating any claims he had against Tasos regarding the redemption of Executive Cove in a subsequent litigation.  But here we do not apply the doctrine of res judicata because Steve's claims related to Executive Cove did not receive a judgment on the merits in the Executor litigation.  "A judgment is on the merits when it amounts to a decision as to the respective rights and liabilities of the parties." *Alexander v. Cobb*, 298 Va. 380, 388 (2020) (quoting *Storm v. Nationwide Mut. Ins. Co.*, 199 Va. 130, 134 (1957)).  While the circuit court in the Executor litigation denied Steve's motion to set aside the redemption in that specific action, the court also specifically ruled that Smith could bring the issue of the redemption before the circuit court in a subsequent proceeding.  So the record is clear that the circuit court made no determination concerning whether the redemption was proper, and accordingly made no determination as to whether Tasos breached any fiduciary duties in his actions related to the redemption. *See Galiotos I*, 300 Va. at 14 (noting that the circuit court "concluded that it did not need to resolve the issue of whether there was a breach of fiduciary duty in order to rule upon whether the co-executors should be removed").  Because there was no final judgment on the merits regarding the redemption, as the circuit court in the prior litigation made no "decision as to the respective rights and liabilities of the parties," *Alexander*, 298 Va. at 388, the doctrine of res judicata does not bar Steve and Paul from asserting their claims related to the redemption in the current litigation.

asserted in those pleadings.'" *Allison v. Brown*, 293 Va. 617, 625 (2017) (alteration in original) (quoting *Dabney v. Augusta Mut. Ins. Co.*, 282 Va. 78, 86 (2011)). "Thus, a court is not permitted to enter a decree or judgment order based on facts not alleged or on a right not pleaded and claimed." *Id.* at 625-26 (quoting *Dabney*, 282 Va. at 86); *see* Rule 1:4(d). "The purpose in requiring 'pleadings is to give notice to the opposing party of the nature and character of the claim, without which the most rudimentary due process safeguards would be denied.'" *Cirrito v. Cirrito*, 44 Va. App. 287, 315 (2004) (quoting *Boyd v. Boyd*, 2 Va. App. 16, 19 (1986)).

Here, in her complaint/petition, Smith included a short procedural history of the case: Steve and Tasos were removed as co-executors by the circuit court; she was qualified as the administrator of the Estate; and "[a] dispute exists between Tasos, Stavros and Paul regarding the [r]edemption and the price for the [r]edemption of Executive Cove." The complaint/petition lacked any factual allegations related to her conduct in bringing the pleading.

Following her factual allegations, Smith requested declaratory judgment or aid and direction on whether the redemption and redemption price of Executive Cove were proper, and on how to proceed if either were improper. She did not ask for declaratory judgment or guidance on two questions the circuit court answered in its final order—whether the complaint/petition was brought in good faith, and whether the filing of the complaint/petition was necessary to resolve issues for the administration of the Estate.

While acknowledging that her good faith and the necessity of bringing the complaint/petition were not facts alleged in her pleading, Smith makes two separate arguments to counter the conclusion that the circuit court was not permitted to include these specific findings in its final order.[13] We disagree with both.

---

[13] In addition to the two grounds addressed above, Smith argues that we should not consider Steve and Paul's assignment of error because they have provided only a "skeletal argument" in support of argument on brief. *See* Rule 5A:20. We find no merit in this assertion.

Smith first relies on Code § 8.01-271.1(B). That statute provides, in relevant part, that

> [t]he signature of an attorney or party constitutes a certificate by him that . . . (ii) to the best of his knowledge, information and belief . . . [the pleading] is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and (iii) it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

Code § 8.01-271.1(B). Further, if a pleading violates this certification, "the court, upon motion or upon its own initiative, shall impose upon the person who signed the paper or made the motion, a represented party, or both, an appropriate sanction." Code § 8.01-271.1(D). The statute's purpose is to "protect[] . . . the public" by "hold[ing] attorneys and pro se litigants to a high degree of accountability for the assertions they make in judicial proceedings," *Shipe v. Hunter*, 280 Va. 480, 484 (2010), and is "designed to ensure dignity and decorum in the judicial process," *Taboada v. Daly Seven, Inc.*, 272 Va. 211, 216 (2006). To effectuate these goals, Code § 8.01-271.1 "imposes a good faith requirement on all pleadings." *Adkins v. CP/IPERS Arlington Hotel LLC*, 293 Va. 446, 451 (2017).

---

Their briefs cite the relevant case law and point to the circuit court's alleged error in its application of the cited legal principles.

Smith also asserts that any error the circuit court committed in including the finding related to her conduct was harmless. "Absent an error of constitutional magnitude, 'no judgment shall be arrested or reversed' '[w]hen it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached.'" *Ferrara v. Commonwealth*, 299 Va. 438, 450 (2021) (alteration in original) (quoting Code § 8.01-678). "Under the doctrine of harmless error, we will affirm the circuit court's judgment when we can conclude that the error at issue could not have affected the court's result." *Galiotos I*, 300 Va. at 15 (quoting *Forbes v. Rapp*, 269 Va. 374, 382 (2005)). Smith argues that whether her complaint/petition was brought in good faith and necessary to resolve issues for the administration of the Estate could not have affected the circuit court's result in this case because "the result was summary judgment for Executive Cove and Tasos on the question of Tasos's redemption of the Estate's interest in Executive Cove" and "[t]hat is what this appeal is about." But including this finding in the final order was not an error that led to the circuit court's result in this case—it was in fact *a part of* the circuit court's result, as a finding it included in its final order. Thus, we conclude that its inclusion was not harmless to the circuit court's result as alleged by Smith.

- 16 -

Smith asserts that the provisions of Code § 8.01-271.1 necessarily placed the question of whether the pleading was filed in good faith and for a proper purpose before the circuit court, and thus Steve and Paul were on notice that these matters could be adjudicated. We reject this contention because it conflates the requirements for pleadings signed by any attorney before a court in Virginia with the specific duties owed by a fiduciary. Here, Smith's pleading was not simply a pleading filed by an attorney but was instead a pleading filed in her capacity as the administrator of the Estate. In her role as administrator, she owed a fiduciary duty to the Estate and its beneficiaries. *See Kitchen v. Throckmorton*, 223 Va. 164, 172 (1982) (noting that the duty of an administrator of an estate is "that of a fiduciary"). Smith specifically had the duty to "exercise the highest fidelity and utmost good faith in dealing with the estate." *Id.* (quoting *Virginia Trust Co. v. Evans*, 193 Va. 425, 433 (1952)); *see also* Code § 64.2-514 (requiring every personal representative of an estate to "administer, well and truly, the whole personal estate of his decedent").[14] The circuit court found that Smith's pleading "was brought in good faith" and "was necessary to resolve issues for the administration of the Estate." Because Smith brought her pleading before the court as the administrator of the Estate, these findings specifically relate to her fiduciary obligations to administer the Estate in good faith. Therefore, we reject Smith's argument that the issues of her good faith and the necessity of filing the complaint/petition as the administrator of the Estate were inherently before the circuit court due to the general requirements for pleadings contained in Code § 8.01-271.1.

Smith also argues that the circuit court was permitted to include the finding regarding her conduct in the final order because in her complaint/petition, she asked for "such further relief as this [c]ourt may deem just and prudent." It is true that "a court of equity may grant proper relief

---

[14] In her role as administrator of the Estate, Smith also acted as the personal representative for the Estate. *See* Code § 1-234 (defining "personal representative").

under the general prayer that is consistent with the case stated in the bill of complaint." *Jenkins v. Bay House Assocs., L.P.*, 266 Va. 39, 44 (2003). But "a general prayer will support relief only for those matters placed in controversy by the pleadings and, thus, any relief granted must be supported by allegations of material facts in the pleadings that will sustain such relief." *Id.* at 45. "This rule reflects the principle that although the power of an equity court is broad, that power does not permit a court to adjudicate claims that the parties have not asserted." *Id.*

Smith asserts that the issue of her good faith and the necessity of filing the complaint/petition was placed in controversy throughout the litigation of the case. Therefore, she argues, because the finding related to her conduct was consistent with matters litigated in the case, the circuit court was permitted to include its finding due to the general prayer included in her pleading. In support of this claim, Smith cites to several points in the record where Tasos, in briefing and at hearings, alleged: that her request for guidance from the circuit court was "unnecessary and imprudent litigation"; that her opposition to Tasos's motion for a bill of particulars was "self-serving and contrary to her fiduciary obligations to the beneficiaries"; that in pursuing the action, she "ha[d] failed, and not only failed in the duties but cost[] the [E]state a lot of money" and been "extremely wasteful," and had gone "haywire"; and that Smith's law firm was receiving large sums of attorney fees due to Smith bringing this action.[15]

_____

[15] Smith also cites her own complaint/petition as placing the issue of her conduct into controversy. She cites her initial pleading, where she stated that she "now finds herself in an untenable situation" regarding the redemption issue, because "[i]f she sides with Tasos then [she] opens herself up to a lawsuit by Steve and Paul, and conversely if she sides with Steve and Paul, Tasos could sue her." Even assuming this statement could be construed as a factual allegation related to her good faith and the necessity of bringing the complaint/petition, Smith removed it from her amended complaint/petition that is the operative pleading in this case. "When an amended [pleading] . . . is filed and a comparison of the original and amended pleading shows that the amended [pleading] . . . was intended as a substitute for the original, the case stands as though the original had never been filed, so far as it relates to the statement of facts." *Breeding by Breeding v. Hensley*, 258 Va. 207, 212 (1999).

Smith also points to a portion of the record containing a complaint filed against her as administrator by Steve in the Norfolk Circuit Court, alleging a breach of her fiduciary duties to

- 18 -

But these allegations did not place these issues in controversy because the pleadings at issue were devoid of any allegation related to Smith's conduct in bringing her complaint/petition. "The issues in a case are made by the pleadings, and not by the testimony of witnesses or other evidence." *Jenkins*, 266 Va. at 44 (quoting *Ted Lansing Supply Co. v. Royal Aluminum & Constr. Corp.*, 221 Va. 1139, 1141 (1981)). Although at times Tasos made certain allegations concerning Smith's good faith and the necessity of bringing the action in briefing and at hearings, his motion for summary judgment did not address these issues. And Smith did not move to amend her complaint/petition to address these allegations made by Tasos.[16] Because any relief granted based on a general prayer for relief "must be supported by allegations of material facts in the pleadings," *Jenkins*, 266 Va. at 45, we conclude the failure of Smith's pleading to allege her good faith and the necessity of bringing her complaint/petition placed these issues beyond the reach of her general prayer for relief.[17]

---

the Estate. Contrary to her assertion, this filing does not demonstrate that the issue of her good faith and the necessity of filing her complaint/petition was placed in controversy during the litigation of *this case*—rather, it clearly shows that the issue was raised in another pleading, in another case.

[16] Our holding on this assignment of error is made more evident when considering Steve's own proposed amended pleading. During the litigation, Steve moved to amend his pleading, in part because he sought "leave to amend to bring a claim against . . . Smith for breaching her fiduciary duty to the Estate and the . . . Trust by pursuing her own personal interests at the expense of the Estate and the . . . Trust." The circuit court denied the motion to amend. While Steve wanted to challenge the very findings included in the final order, he had no notice that they would be adjudicated after the circuit court denied his motion to amend to include these allegations against Smith.

[17] Smith relies on *D'Ambrosio v. D'Ambrosio*, 45 Va. App. 323 (2005), in support of her argument that Tasos's allegations made on brief and during hearings placed these issues in controversy and thus the circuit court did not err in including the finding in its final order. We disagree, finding the case distinguishable from the facts here. In *D'Ambrosio*, our Court affirmed the circuit court's decision to grant the mother the sole right to select her child's pediatrician, even though she had not specifically requested that relief. *Id.* at 336-39. Unlike the present matter, allegations related to the pediatrician were included in the parties' respective motions for injunctive relief. *Id.* at 337. We held that "[b]ecause the relief requested was *consistent with the allegations in the petition* and the arguments made at trial, and because the

Here, the circuit court "enter[ed] a decree or judgment order based on facts not alleged," *Allison*, 293 Va. at 625 (quoting *Dabney*, 282 Va. at 86), and therefore we reverse the portion of the circuit court's final order that included a finding regarding Smith's conduct.

CONCLUSION

Disagreeing with the circuit court's determination that Article 10.4 of the Operating Agreement applied to the redemption of Executive Cove, we reverse the circuit court's grant of summary judgment. We also hold that the circuit court erred in concluding that Steve and Paul lacked standing to pursue their claims against Tasos and Executive Cove in their capacities as co-trustees of the Trust. The circuit court further erred in including a finding related to Smith's conduct that was not alleged in her complaint/petition. Because our ruling does not end this case, we remand it to the circuit court for further proceedings consistent with this opinion.[18]

*Reversed and remanded.*

---

trial court has clear authority under Code § 20-108 to modify a custody decree when it deems it to be in the best interests of the child," the court did not err in granting relief that had not specifically been requested by the parties. *Id.* at 338 (emphasis added). In contrast, the complaint/petition here contained no allegations related to the factual finding included by the circuit court in its final order.

[18] Because we reverse the grant of summary judgment, we also reverse the circuit court's attorney fee awards made to the parties to allow reconsideration on remand. Therefore, we need not address Steve and Paul's assignments of error concerning attorney fees, nor Executive Cove's cross-assignment of error on this subject.